FILED
U.S. District Court
District of Kansas

MAY 2 3 2024

Clerk, U.S. District Court
By  JRoach   Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHAN HANES,<br><br>Defendant. | Case No. **24-CR-10013-01-JWB** |

**PLEA AGREEMENT**

The United States of America, by and through Assistant United States Attorney Aaron L. Smith, and Shan Hanes, the defendant, personally and by and through his counsel, John Stang, hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count(s) 1 of the Information charging a violation of Title 18, U.S.C., Section 656, that is, Embezzlement by a Bank Officer. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count 1 of the Information to which he has agreed to plead guilty is not more than thirty (30) years of imprisonment, a fine not to exceed $1,000000, up to five (5) years of supervised release, restitution in the amount of up to and approximately $60.5 million and a $100.00 mandatory special assessment. The defendant further agrees to forfeit property or money to the United States, as agreed.

2. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

Ver. 22-01

From on or about December, 2022 and through at least July 2023, Shan Hanes (defendant) did execute a scheme to defraud Heartland Tri-State Bank (HTSB) in Elkhart, Kansas. During the time period of May 30, 2023 to July 7, 2023, the defendant, as Chief Executive Officer (CEO) of Heartland Tri-State Bank, initiated a series of 10 outgoing wire transfers totaling approximately $47.1 million of Heartland's funds to a cryptocurrency wallet. The investigation revealed the funds were transferred to multiple cryptocurrency accounts controlled by unidentified third parties. At all relevant times HTSB was insured by the Federal Deposit Insurance Corporation.

An investigation was conducted by agents of the Federal Bureau of Investigation (FBI) and agents of the Office of Inspector General (OIG) for the FDIC, Federal Reserve Bank and Federal Housing Finance Agency.

**Origins of Scheme:**

The investigation revealed that in or about December 2022 the defendant began communicating with an unidentified third party (co-conspirator) via WhatsApp, an electronic messaging app. The conversations are steered toward the defendant investing in cryptocurrency. During the relevant time, the defendant maintained personal bank accounts at HTSB and a second bank[1].

In January, 2023, the defendant transfers $5,000 from his bank account to a cryptocurrency exchange for the purchase of cryptocurrency. Late in January, the defendant embezzles approximately $30,000 from Elkhart Church of Christ. Those funds are deposited into the defendant's personal bank account at the second bank, and are used to make cryptocurrency investments through MCB Foris[2] in February. In March the defendant began wiring funds from HTSB to his account at the second bank, and these transfers continue through May 2023. Additionally, in April the defendant embezzled another $10,000 from Elkhart Church of Christ and $10,000 from the Santa Fe Investment Club. The defendant also obtained some unsecured loans to obtain funds. Through May 2, 2023, the defendant made approximately 9 wire transfers to MCB Foris, totaling approximately $268,400.

**The Scheme to Defraud Heartland Tri-State Bank:**

The discussions between the defendant and co-conspirator then shift to making wire transfers of funds to Payward Ventures[3] for the purpose of purchasing cryptocurrency. The first wire transfer from HTSB was on May 17, 2023 for $5,000, along with a wire transfer of $1.244 million from the defendant's account at the second bank.

According to conversations between the co-conspirator and defendant, after the funds are transferred to Payward Ventures, the funds are to be deposited into the defendant's cryptocurrency account at Kraken.[4] Beginning on May 17, 2023, the defendant begins

---

[1] Bank of the Panhandle, an FDIC insured financial institution.
[2] Metropolitan Commercial Bank, a cryptocurrency servicing bank in New York.
[3] Payward Ventures is a cryptocurrency exchange.
[4] Kraken is a cryptocurrency exchange.

embezzling funds from HTSB to make the wire transfers to Payward Ventures. The wire transfers are represented below:

| Approx. Date of Wire | Amount | Transfer |
|---|---|---|
| 5/17/2023 | $5,000 | Wire transfer caused by defendant from HTSB to Payward Ventures. |
| 5/30/2023 | $1.5 million | Wire transfer caused by defendant from HTSB to Payward Ventures. |
| 5/31/2023 | $1.5 million | Wire transfer caused by defendant from HTSB to Payward Ventures. |
| 6/2/2023 | $3.5 million | Wire transfer caused by defendant from HTSB to Payward Ventures. |
| 6/2/2023 | $3.2 million | Wire transfer caused by defendant from HTSB to Payward Ventures. |
| 6/14/2023 | $10 million | Wire transfer caused by defendant from HTSB to Payward Ventures. |
| 6/20/2023 | $1.4 million | Wire transfer caused by defendant from HTSB to Payward Ventures. |
| 6/23/2023 | $10.3 million | Wire transfer caused by defendant from HTSB to Payward Ventures. |
| 6/27/2023 | $3.3 million | Wire transfer caused by defendant from HTSB to Payward Ventures. |
| 7/5/2023 | $8 million | Wire transfer caused by defendant from HTSB to Payward Ventures. |
| 7/7/2023 | $4.4 million | Wire transfer caused by defendant from HTSB to Payward Ventures. |

Throughout the series of wire transfers the defendant and co-conspirator are maintaining communications through WhatsApp. The scheme and justification for the continued transfers is the impression that more funds are constantly needed to "unfreeze" the previously deposited funds. This cycle continues throughout the scheme.

Further, during this scheme the defendant makes misrepresentations to various people to access and transfer the funds, and to attempt to gain access to further funds. The defendant directed HTSB employees to make the wire transfers and lied to HTSB employees about the purpose of the transfers. The defendant lied to members of HTSB board of directors

3

about the purpose of the wire transfers. The defendant induced a bank investor for the use of the investor's HTSB account to transfer money through before making a wire transfer to Payward Ventures. This was the $8 million wire transfer. After the July 7 wire transfer the defendant continues to make false statements to bank investors and members of the board of directors about the purpose of the wire transfers. Additionally, the defendant attempted to secure another loan of approximately $69 million from an additional financial institution. That institution declined.

The defendant admits, that while serving as an HTSB officer and employee he did embezzle funds from HTSB with the intent to injure and defraud the same, in the amounts described herein. The embezzlement caused the failure of the bank, the loss of the funds transferred from HTSB and the bank failure caused the complete loss of equity by bank investors.

Upon conviction of the offense alleged in Count One of the Information, Defendant Shan Hanes, shall forfeit all property, real and personal, constituting, or derived from, proceeds traceable to the offense, directly or indirectly, as a result of the violations of law set out in Count One of this Information, including, but not limited to: any funds potentially recovered from cryptocurrency addresses, and a money judgment in the amount of at least $47.1 million.

3. **Application of the Sentencing Guidelines.** The parties understand that the Court will apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence and may impose a sentence consistent with the Guidelines. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable evidence, including hearsay. Nothing in this section prevents the parties from filing objections to the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines. The parties agree that the Court will determine the final Guideline range. The parties understand this Plea Agreement binds the parties only and does not bind the Court.

4. **Relevant Conduct.** The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all

other uncharged related criminal activity, will be considered as relevant conduct for purposes of calculating the offense level for the count(s) of conviction, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

      5.      **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

    (a)    to not file any additional charges against the defendant arising out of the facts forming the basis for the present Information;

    (b)    to allow the defendant to reserve the right to request a downward departure and/or a variance, in which case, the government agrees to recommend a sentence no higher than the high end of the Guideline range; and

    (c)    to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if his offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds he qualifies for a two-level reduction, the United States will move at the time of sentencing for an additional one-level reduction for acceptance of responsibility because he timely notified the government of his intention to enter a plea of guilty.

The United States' obligations under this Paragraph are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms,

the United States shall not be bound by this Paragraph, and may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this Plea Agreement.

6. **Additional Agreement.** The defendant agrees to enter into a Consent Order of Removal and Prohibition with the Board of Governors of the Federal Reserve System pursuant to 12 U.S.C. § 1818(e)(7) of the Federal Deposit Insurance Act, as amended. The defendant understands that by virtue of his/her consent to such an Order, s/he shall agree not to become or continue serving as an officer, director, employee, or institution-affiliated party, as defined in 12 U.S.C. §§ 1813(u) and 1818(b)(3), or participate in any manner in the conduct of the affairs of any institution or agency specified in 12 U.S.C. § 1818(e)(7)(A), without the prior approval of the appropriate federal financial institution regulatory agency, as defined in 12 U.S.C. § 1818(e)(7)(D).

7. **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence he will receive.

8. **Forfeiture of Assets.** The defendant knowingly and voluntarily agrees and consents to the forfeiture of the following property to the United States:

- Contents of, and funds traceable to the blockchain virtual currency address *e7dB[5], held by or under the care or custody of Tether.

The defendant agrees that this property was willfully misapplied, and embezzled during the commission of Count 1. The defendant also agrees to the imposition of a forfeiture judgment against him in the amount of approximately $47.1 million, less any amount potentially recovered from the aforementioned Tether virtual currency address, which sum represents proceeds the defendant obtained from Count 1. The defendant knowingly and voluntarily waives his right to a jury trial regarding the forfeiture of property, and voluntarily waives all constitutional, legal and equitable defenses to the imposition of a forfeiture judgment and to the forfeiture of the property listed herein and withdraws any administrative claim or petition for remission regarding the property. The defendant acknowledges and agrees that the forfeiture of this property and the imposition of a forfeiture judgment shall not be deemed an alteration of his sentence or this agreement, and shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. Additionally, the defendant agrees to the immediate entry of the Preliminary Order of Forfeiture, and agrees to sign any and all documents necessary to effectuate the forfeiture and transfer of his interest and possession of the property identified in this paragraph to the United States prior to the imposition of sentence.

9. **Restitution.** The defendant knowingly and voluntarily agrees and consents to pay restitution pursuant to 18 U.S.C. § 3663(a)(3) for all losses caused by Defendant's relevant conduct in this case, not just losses resulting from the counts of conviction, in *at least* the following approximate amounts:

---

[5] The full wallet address has been redacted.

| Victim: | Total Loss: |
|---|---|
| Federal Deposit Insurance Corporation as receiver for Heartland Tri-State Bank | Approximately $47.1 million |
| Shareholders of Elkhart Financial Corporation<br><br>(Individual shareholders will be provided to the United States Probation Office) | Between approximately: $9,278,808.35 and $13,433,529.20<br><br>(The Court determination of cost basis and date of valuation will determine the loss amount) |

(a) The victims and amounts shown in the above table reflect all currently identified victims and known loss amounts. In the event additional victims and/or losses are discovered after execution of this Plea Agreement but before sentencing, Defendant agrees to pay restitution to the additional victims and/or in the additional amounts for all losses caused by Defendant's relevant conduct in this case, and not only for the offense(s) of conviction, pursuant to 18 U.S.C. § 3663(a)(3) and/or 18 U.S.C. § 3663A(a)(3).

(b) Irrespective of any payments by other defendants that are ordered to be jointly and severally liable for restitution, Defendant understands he is liable for the full amount of restitution ordered until Defendant has paid that amount in full or the victim's loss is repaid in full, whichever occurs first.

(c) Defendant acknowledges that the liability to pay restitution does not terminate until 20 years from entry of judgment or 20 years after defendant's release from imprisonment, whichever is later pursuant to 18 U.S.C. § 3613(b).

10. **Identification of Assets and Agreement Concerning Monetary Penalties.**

In order to facilitate the collection of criminal monetary penalties, including restitution, fines, and assessments, to be imposed in connection with this case, Defendant agrees as follows:

(a)   Payments toward anticipated criminal monetary penalties made prior to sentencing will be held by the Court Clerk and then applied to the criminal monetary penalties following entry of the Judgment in a Criminal Case. If the amount paid prior to sentencing exceeds the amount ordered at sentencing, the United States Attorney's Office will request language to be included in the Judgment in a Criminal case to authorize the Court Clerk to refund any overpayment to Defendant. Payments made prior to sentencing can be sent to the following address and should reference Defendant's name and case number:

Clerk, U.S. District Court

            401 N. Market, Room 204
            Wichita, Kansas 67202

(b)    Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control of more than $2,000 in value, without written approval from the United States Attorney's Office.

(c)    Within 30 days of any request by the United States Attorney's Office, Defendant agrees to execute a financial statement and provide supporting documentation. Defendant expressly authorizes the United States to obtain a credit report before sentencing. Further, Defendant agrees to execute authorizations for the release of all financial information requested by the United States.

(d)    Defendant agrees the United States Attorney's Office may, pursuant to F.R.Civ.P. Rule 45, subpoena any records it deems relevant to conduct a full financial investigation of defendant's assets prior to sentencing.

(e)    Defendant authorizes the United States to file a Notice of Lis Pendens prior to judgment on any real property in which defendant holds an ownership interest.

(f)    Defendant agrees that all information defendant provides to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office. Likewise, all information defendant provides to the United States Attorney's Office or independently obtained by the United States Attorney's Office in the course of its financial investigation of Defendant may be provided to the United States Probation Office.

(g)    All monetary penalties (including any fine, restitution, assessment, or forfeiture judgment) imposed by the Court, will be due and payable immediately and subject to immediate enforcement by the United States. Any payment schedule set by the Court is a minimum schedule of payment and not a limitation on the United States to enforce the judgment.

(h)    Defendant waives any requirement for demand of payment on any criminal monetary penalties or forfeiture judgment entered by this Court.

(i)    Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default.

(j)    If defendant posted funds as security for defendant's appearance in this case, the defendant authorizes the Court to release the funds posted the Court Clerk to be applied to the criminal monetary impositions at the time of sentencing.

(k)    Defendant understands he has an obligation to notify the court and the United States Attorney's Office of any material change in Defendant's economic

circumstances that might affect Defendant's ability to pay restitution pursuant to 18 U.S.C. § 3664(k).

(l) Defendant understands that failure to comply with the provisions of this section may constitute a breach of this plea agreement, as outlined in Paragraph 5, above.

11. **Withdrawal of Plea Not Permitted.** The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which he does not agree, he will not be permitted to withdraw his guilty plea.

12. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

13. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including assessments and restitution, as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under

10

Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs or varies upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

14. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

15. **Waiver of Claim for Attorney's Fees.** The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

16. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right

to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

17. **Parties to the Agreement.** The defendant understands this Plea Agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

18. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

_____          Date: 5/23/2024
AARON L. SMITH
Assistant United States Attorney

*s/ Duston Slinkard*                                      *May 16, 2024*
_____          Date:_____
DUSTON L. SLINKARD
Assistant United States Attorney
Supervisor

*signatures continue on the following page.*

12

_____  Date: 5/23/24
SHAN HANES
Defendant

_____  Date: 5/23/24
JOHN STANG
Counsel for Defendant