05/23/2024      USA v. HANES      24-10013           1

```
 1              IN THE UNITED STATES DISTRICT COURT
                     DISTRICT OF KANSAS
 2


 3
   THE UNITED STATES OF AMERICA,
 4
                 Plaintiff,
 5
        vs.                         District Court
 6                                  Case Number
   SHAN HANES,                      24-10013
 7
                 Defendant.
 8


 9                 TRANSCRIPT OF PROCEEDINGS
10

11      On the 23rd day of May, 2024 at 1:00 p.m. came on

12 to be heard in the CHANGE OF PLEA HEARING in the

13 above-entitled and numbered cause before the HONORABLE

14 JOHN W. BROOMES, Judge of the United States District

15 Court for the District of Kansas, Sitting in Wichita.

16      Proceedings recorded by mechanical stenography.

17      Transcript produced by computer.

18

19 APPEARANCES

20      The Plaintiff appeared by and through:
        Mr. Aaron Smith
21      United States Attorney's Office
        301 N. Main, Suite 1200
22      Wichita, Kansas 67202

23      The Defendant appeared in person, by and through:
        Mr. John Stang
24      Hulnick, Stang, Gering & Leavitt, PA
        310 W. Central, Suite 111
25      Wichita, KS 67202
```

05/23/2024      USA v. HANES      24-10013      2

1          (The following proceedings commenced at 1:00 p.m.

2   and have been requested transcribed:)

3          THE COURT:  This is Case Number 24-10013, United

4   States versus Shan Hanes.

5          May I have appearances, please.

6          MR. SMITH:  Your Honor, the United States

7   appears by Assistant U.S. Attorney, Aaron Smith.

8          MR. STANG:  May it please the Court.

9          John Stang on behalf of Mr. Hanes who is seated to

10   my right in the courtroom.

11          THE COURT:  Thank you.

12          Mr. Hanes, can you understand everything that is

13   being said in the courtroom today?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Based on the charges in this case, I

16   gather there's some victims.

17          Will the Government report on notification of

18   victims and their presence for this hearing?

19          MR. SMITH:  Yes, Your Honor, there are victims

20   present in this hearing.  They're seated behind me.

21          THE COURT:  Any of them plan to speak?

22          MR. SMITH:  I don't believe anybody plans to

23   speak at the plea.  They wish to speak at the sentencing.

24          THE COURT:  Very well.

25          Mr. Hanes, it's my understanding we're here today

1  to consider a guilty plea, and that you're prepared to

2  sign a written petition to plead guilty pursuant to an

3  agreement between you and the Government.

4          Is that right?

5          THE DEFENDANT:  Yes.

6          THE COURT:  In order for your proposed guilty

7  plea to be valid you must, first, swear or affirm to

8  answer all my questions truthfully.  If you answer any of

9  my questions falsely while under oath, or if any of the

10 statements in your written plea petition are false, then

11 those false statements could be used against you in a

12 later prosecution for perjury resulting in additional

13 prison time.

14         Do you understand that?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Swear the defendant.

17         COURTROOM DEPUTY ROACH:  Would you please stand

18 and raise your right hand.

19         You do solemnly swear that the statements given in

20 the Petition to Enter a Plea of Guilty herein are true

21 and correct, and that any oral statements you make at

22 this hearing are true and correct, so help you God?

23         THE DEFENDANT:  Yes.

24         COURTROOM DEPUTY ROACH:  Thank you.

25         THE COURT:  During the course of this hearing

1  I'm going to ask you some questions to make sure you're

2  mentally competent to make a very important legal

3  decision, such as pleading guilty.

4       I want to make sure you understand the charge

5  against you; that your proposed guilty plea is being

6  entered into knowingly and voluntarily; that it is not

7  the result of any force or threats, nor the result of any

8  promises, other than those specifically set forth in your

9  Plea Agreement; and that your proposed guilty plea is

10  supported by evidence the Government could present if

11  your case went to trial.

12       Do you understand the purpose of this hearing?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Do you have any questions about why

15  we're here today?

16            THE DEFENDANT:  No.

17            THE COURT:  If I ask you a question and you

18  don't hear me, or you don't understand what I am talking

19  about, you need to let me know that so I can clear it up

20  for you.  And I want you to know that you're always free

21  to talk privately with your lawyer behalf answering any

22  of my questions.

23       Do you understand all that?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Please state your full name, date of

05/23/2024     USA v. HANES     24-10013     5

1  birth, and current age.

2          THE DEFENDANT:  Shan Lynn Hanes, August 5th,

3  1971, so I'm 52.

4          THE COURT:  Where were you born?

5          THE DEFENDANT:  Guymon, Oklahoma.

6          THE COURT:  Where at?

7          THE DEFENDANT:  Guymon, Oklahoma.

8          THE COURT:  You a United States citizen?

9          THE DEFENDANT:  Yes.

10          THE COURT:  How far did you go in school?

11          THE DEFENDANT:  College degree.

12          THE COURT:  How much of one?

13          THE DEFENDANT:  I'm sorry, I didn't --

14          THE COURT:  How far did you go in college?

15          THE DEFENDANT:  I graduated with a BS.

16          THE COURT:  In what?

17          THE DEFENDANT:  Ag business.

18          THE COURT:  Can you read English?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Hush them up.

21      Have you ever been treated for any mental illness,

22  been confined to an institution or facility because of

23  mental illness, or had any court determine that you were

24  mentally ill or incapacitated?

25          THE DEFENDANT:  No.

05/23/2024     USA v. HANES     24-10013       6

1           THE COURT:  Have you consumed any alcoholic

2  beverages or taken any drugs, medicines, or pills of any

3  kind in the last 48 hours?

4           THE DEFENDANT:  No.

5           THE COURT:  Are you able to think clearly today?

6           THE DEFENDANT:  Yes.

7           THE COURT:  You have in front of you copies of

8  your Plea Agreement, your plea petition, and the

9  information filed against you at Docket Entry 1 in this

10 case?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Have you signed your Plea Agreement?

13          THE DEFENDANT:  I have not yet, no.

14          THE COURT:  If you want to plead guilty under a

15 plea agreement, now is the time to sign it.

16          THE DEFENDANT:  It's been signed, Your Honor.

17          THE COURT:  Very well.

18       According to paragraph 1 of your Plea Agreement,

19 you plan to plead guilty to Count 1 of your information

20 which charges you with embezzlement by a bank officer, is

21 that correct?

22          THE DEFENDANT:  Yes.

23          THE COURT:  If we look over at the information,

24 under Count 1 of that document it incorporates some

25 allegations of some preceding paragraphs about your role

1  at Heartland Tri-State Bank, and some cryptocurrency

2  transactions and other activities related thereto,

3  culminating in a total funds transferred from Heartland

4  Tri-State Bank of $47.1 million that resulted in that

5  bank failing and being placed in receivership.

6         And then Count 1 says, specifically, that on or

7  about and between May 30th, 2023 and July 7th, 2023 that

8  you, being an officer and employee of Heartland Tri-State

9  Bank, a financial institution whose deposits are insured

10  by the Federal Deposit Insurance Corporation, with the

11  intent to injure and defraud Heartland Tri-State Bank,

12  willfully misapplied and embezzled approximately $47.1

13  million of the monies, funds, and credits of Heartland

14  Tri-State Bank, by causing the wire transfer of the funds

15  for the purchase of cryptocurrency intended for the

16  personal benefit of the defendant.

17         And that that amounts to a violation of Title 18,

18  United States Code, Sections 656 and Section 2.

19         Do you understand that that is the charge to which

20  you are planning to plead guilty today?

21            THE DEFENDANT:  Yes.

22            THE COURT:  If you're found guilty on that

23  charge, the maximum punishment under the law would be a

24  prison term of 30 years, to be followed by supervised

25  release of up to five years, restitution in an amount of

1  around $60.5 million, and a $100 mandatory special

2  assessment, along with some forfeitures addressed

3  elsewhere.

4      And then there's a fine provision, and the first

5  paragraph of the Plea Agreement just pegs that fine at a

6  million dollars.

7      I noted in the plea petition it characterizes the

8  fine as being either the million dollars under 18 U.S.

9  Code 3571(b)(3), or alternative of up to the greater of

10  twice the gross gain, or twice the gross loss.

11      That wasn't addressed in paragraph 1 of the actual

12  fine he's facing.

13      Have you all determined that for some reason that

14  alternative provision would not apply in this case?

15      MR. SMITH:  656 has its own embedded fine

16  provision and that fine provision is set at $1 million

17  under 656.

18      THE COURT:  And you think that controls over --

19      MR. SMITH:  Yes.

20      THE COURT:  -- the other statutory provision?

21  Is that your --

22      MR. STANG:  That's my error, Your Honor, I

23  apologize.

24      THE COURT:  Okay.  So if that's what you all

25  agree applies, then I have no reason to disagree with it.

1        Then I think we should correct that in paragraph

2  10 of the plea petition so that it reads accurately and

3  doesn't introduce incorrect potential penalties here.

4        I think you've got a total penalty section there

5  of the prison, fine, supervised release, special

6  assessment, forfeiture, so what we're really talking

7  about is striking from that relevant portion of paragraph

8  10 of the plea petition the phrase that begins, "Or in

9  the alternative," a fine not more than what I read to

10  you.

11        MR. STANG:  The greater of twice the gross gain

12  or twice the gross loss.

13        THE COURT:  Yep.

14        And concluding at the end of that parenthetical

15  that cites to 18 U.S. Code 3571(d).

16        MR. STANG:  I've gotten that done, Your Honor.

17  Thank you.

18        THE COURT:  Okay.  Make sure you and your client

19  initial that.

20        Okay.  Do you understand what we were just talking

21  about there, Mr. Hanes?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Okay.  You also understand that if

24  you were to violate the conditions of your supervised

25  release following completion of any prison sentence, you

1  could then be required -- required to serve up to three

2  more years in prison for any such violations, and then

3  you could be required to go back on supervised release

4  once you got out of prison?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  And it's possible that you

7  could have your supervised release revoked multiple times

8  and you could have to go back to prison repeatedly for up

9  to three years at a time if you keep getting your

10  supervised release revoked, until basically there's a

11  formula where once we have used up all the revocation

12  time, then you don't have to get sent back anymore, but

13  it does create the potential for multiple revocations.

14          And I bring that point out, particularly when the

15  supervised release and revocation terms are longer, as

16  they are here.

17          Any questions about that?

18          THE DEFENDANT:  No.

19          THE COURT:  Very well.

20          I think based on the 30-year sentence he would not

21  be eligible for probation.

22          Is that -- am I remembering the cutoff for

23  probation eligibility correctly?

24          MR. SMITH:  This is a Class A felony, so that's

25  correct.

05/23/2024     USA v. HANES     24-10013     11

1          THE COURT:  It's a B; right?  Because he's not

2   facing life, he's facing over 25.

3          MR. SMITH:  A B, correct.

4          THE COURT:  Okay.  So based on that you're not

5   eligible for probation because of the length of the

6   sentence.

7          Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.  The information contains a

10  forfeiture allegation seeking forfeiture up to the amount

11  of which you're alleged to have embezzled, which is $47.1

12  million.

13         And the parties appear to have addressed that in

14  paragraph 8 of your Plea Agreement which says that you

15  knowingly and voluntarily agree and consent to the

16  forfeiture of the following property of the United

17  States, and it is listed as the contents of and funds

18  traceable to the blockchain virtual currency address,

19  it's written there, it's basically an asterisk, lower

20  case E7, lower case D, upper case B, superscript 5 held

21  by or under the care or custody of Tether, T-e-t-h-e-r,

22  with a capital T.

23         And that paragraph goes on to say that you agree

24  that property was willfully misapplied and embezzled

25  during your commission of Count 1.

1      You are further agreeing to a forfeiture judgment

2 against you in the amount of approximately $60.5 million.

3           MR. SMITH:  Your Honor, can I make a correction

4 there?

5      That -- that should read 47.1 million.

6           THE COURT:  Okay.

7           MR. SMITH:  I -- I read this Plea Agreement too

8 many times and I put the restitution amount and the

9 forfeiture amount in the wrong place.

10          THE COURT:  Okay.

11          MR. SMITH:  The 47.1 million.

12          MR. STANG:  And the original agreement does have

13 the 47.1, Your Honor.

14          THE COURT:  Very well.

15      So paragraph 8, the long bodied paragraph, last

16 bodied paragraph in paragraph 8 of the Plea Agreement,

17 the parties are going to correct the reference to 60.5

18 million by striking 60.5 and replacing it with 47.1.

19          MR. SMITH:  And it's typed that way, Your Honor;

20 it won't be stricken.

21      The -- the original that the defendant signed has

22 it as 47.1.

23          THE COURT:  Very well.  Okay.  So we don't even

24 need to make that pen and ink change.

25      All right.  Mr. Hanes, picking up where I left

1  off, you agree that the imposition of a forfeiture

2  judgment against you in the amount of 47.1 million, less

3  any amount potentially recovered from the aforementioned

4  Tether virtual currency address, represents the proceeds

5  that you obtained from Count 1, you're waiving your right

6  to a jury trial on that, and you're waiving any

7  challenges under the law to the imposition of that

8  forfeiture.

9       Do you understand all that?

10       THE DEFENDANT:  Yes, Your Honor.

11       THE COURT:  Then there's a matter of

12  restitution.

13       The parties addressed that in paragraph 9, where

14  it says you knowingly and voluntarily agree and consent

15  to pay restitution for all losses caused by your relevant

16  conduct in this case, not just losses resulting from the

17  count of conviction, in at least the following

18  approximate amounts:

19       And then there's a table indicating approximately

20  47.1 million to the Federal Deposit Insurance Cooperation

21  as receiver for Heartland Tri-State Bank.

22       And then there's a second entry for between

23  approximately $9,278,808.35, and $13,433,529.20, with a

24  note that the Court will determine the cost basis and

25  date of valuation which will then determine the actual

1  amount of loss for that figure, and that that's payable

2  to the shareholders of Elkhart Financial Corporation, the

3  individual names of whom will be provided to the United

4  States Probation Office.

5       Subparagraph (a) indicates that that represents

6  the known victims and their losses, holds open the

7  possibility of additional victims and losses being

8  identified, and says that you agree to pay those, to the

9  extent it's identified before sentencing.

10      Subparagraph (b) says that regardless of whether I

11  impose liability joint and several, or otherwise, on

12  other defendants, that you are liable for the full amount

13  of restitution ordered until you've paid the amount in

14  full or the victim's loss is repaid in full, whichever is

15  first; and has you acknowledging that the liability to

16  pay restitution does not terminate until 20 years from

17  entry of judgment, or 20 years after your release from

18  imprisonment, whichever is later.

19      Do you understand all that?

20      THE DEFENDANT:  Yes, Your Honor.

21      THE COURT:  Do you have any questions about that

22  restitution stuff that I just explained to you?

23      THE DEFENDANT:  No.

24      THE COURT:  Okay.  You also understand that if

25  you were to test positive for the use of illegal

1  controlled substances more than three times during the

2  course of any one-year period while on supervised

3  release, the Court would revoke your supervised release

4  and send you back to prison?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  Before I leave this general

7  section on penalties and charges, one other thing I want

8  to go back and ask you is with respect to the count

9  you're planning to plead guilty to, Count 1 of the

10  information, embezzlement by a bank officer, have you had

11  the opportunity to discuss with your lawyer and get all

12  the questions answered about all the elements of that

13  offense that the Government would be required to prove to

14  a jury beyond a reasonable doubt in order to obtain a

15  conviction against for you that offense if you decided to

16  take your case to trial?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Have you further had an opportunity

19  to discuss with your lawyer and get all your questions

20  answered about any and all defenses to that charge that

21  you could present if you decided to take your case to

22  trial?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Very well.

25          Have you and your lawyer had enough time to

1  discuss the criminal charges against you --

2          THE DEFENDANT:  Yes.

3          THE COURT:  -- and your proposed guilty plea,

4  and also to carefully review everything in the

5  information, your plea petition, and your Plea Agreement?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Were all the documents I just

8  mentioned read by you or at least read to you word for

9  word?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Have you and your lawyer also had

12  time to review and discuss all the documents or other

13  evidence produced by the Government in connection with

14  your case?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Have you and your lawyer discussed

17  in detail all the various advantages and disadvantages of

18  pleading guilty today instead of going to trial later?

19          THE DEFENDANT:  Yes.

20          THE COURT:  You understand you may refuse to

21  enter into any plea agreement with the Government and,

22  instead, insist on taking your case to trial?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Are you completely satisfied with

25  your lawyer's legal advice and representation?

05/23/2024     USA v. HANES     24-10013     17

1            THE DEFENDANT:  Yes.

2            THE COURT:  You have the right under the United

3    States Constitution to be prosecuted with the criminal

4    charge against you in the form of an indictment by a

5    grand jury, which is a jury of 16 to 23 people.

6            When a grand jury convenes, the United States

7    Attorney presents evidence and only if at least 12

8    members of the grand jury find that there's probable

9    cause that you committed a crime could the grand jury

10   return an indictment against you.

11           You may choose to give up your right to indictment

12   and consent to be prosecuted under this information that

13   we have looked at earlier and, in any event, you would

14   still have the right to plead not guilty and you have the

15   right to a trial by jury.

16           Do you understand your right to be indicted by a

17   grand jury and do you wish to give up that right and

18   consent to proceed under the Information filed at Docket

19   Entry 1 in this case?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Very well.

22           Have the defendant execute a written Waiver of

23   Indictment in open court and deliver that document to my

24   courtroom deputy.

25           MR. STANG:  I have done that right now, Your

1   Honor.

2         Oh, I'm sorry, do you want us to sign this right

3   now?

4             THE COURT:  Yes.

5             MR. STANG:  It is done, Your Honor.

6             THE COURT:  Hand that up to my courtroom deputy.

7         Thank you.

8         I find this defendant's knowingly, intelligently,

9   and voluntarily waived his right to indictment and agreed

10  to proceed under the Information filed at Docket Entry 1

11  in this case.

12        Instead of pleading guilty under your Plea

13  Agreement you have the right to plead not guilty, in

14  which event you're guaranteed certain valuable rights

15  under the United States Constitution.  These include the

16  right to a speedy, public trial by a jury of 12 persons

17  randomly selected from the community, and the right to

18  the assistance of a lawyer at that trial and at all

19  stages of the proceedings, including any appeals.

20        If you took your case to trial you would have the

21  right to see and hear all witnesses called by the

22  Government to testify against you.  Your lawyer would be

23  permitted ask questions of all those witnesses and you

24  would have the right to call your own witnesses.

25        You'd have the right to use the subpoena power of

1  the Court to force the production of physical evidence

2  and the attendance of witnesses here in the courtroom.

3       You would have the right to testify on your own

4  behalf, but you'd also have the right to remain silent

5  and not be forced by the Government to testify and

6  possibly incriminate yourself.

7       If you remain silent the jury would be instructed

8  it could draw no inference of guilt based on your

9  silence.

10       At trial, your innocence would be presumed until

11  such time, if ever, as the Government came forth with

12  sufficient evidence to prove to the satisfaction of the

13  jury and the trial judge that you were guilty beyond a

14  reasonable doubt, which is a very high standard of proof.

15       You would have no burden or obligation to prove

16  your innocence at trial.  But by entering a plea of

17  guilty you'd be giving up these very valuable

18  constitutional rights, you'd be admitting all the

19  allegations against you in the information and,

20  therefore, there will be no trial of any kind by a judge

21  or a jury.

22       Do you understand that?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  In paragraph 5 of your Plea

25  Agreement the Government agrees to make certain

05/23/2024     USA v. HANES     24-10013       20

1   sentencing recommendations to the Court.

2         But, as explained in paragraph 7 of your Plea

3   Agreement, those are merely recommendations.  And so if I

4   decide not to go along with what the Government

5   recommends and what you request, and instead impose a

6   longer or less favorable sentence, then as explained in

7   paragraph 11 of your Plea Agreement, you will not be

8   permitted withdraw your guilty plea.

9         Do you understand that?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Paragraph 3 of your Plea Agreement

12   the parties acknowledge that the Court will use the

13   United States Sentencing Guidelines in helping to

14   determine an appropriate sentence in your case, so let me

15   explain to you a little something about the sentencing

16   guidelines.

17         The United States Sentencing Commission has

18   determined that certain offenses, such as the one you're

19   charged with, should be subject to what is called

20   "guideline sentencing."  The guidelines are generally

21   based on two things:

22         First, the seriousness of the offense; and

23         Second, the defendant's criminal history category,

24   if any.

25         Generally speaking, the more serious the offense

1   and more extensive the criminal history, the defendant's

2   prison sentence under the guidelines will get longer.

3          In determining the seriousness of the offense, the

4   sentencing guidelines generally begin with a Base Offense

5   Level, and then other factors specific to the offense in

6   your particular case may be applied to increase or

7   decrease the Total Offense Level, thereby reflecting the

8   seriousness of the offense as committed in your case.

9          In some instances these adjustments to offense

10  level can have a significant impact upward or downward on

11  the guideline sentencing range applicable to your case.

12         And you should know that the sentencing guidelines

13  are not binding on the Court; they're advisory.  Which

14  means that the Court will consider them but is not

15  required to sentence you within the range recommended by

16  the guidelines.

17         Have you discussed with your lawyer the

18  application of the sentencing guidelines to your case,

19  including the various factors that could increase or

20  reduce the length of your sentence under the guidelines?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  In addition to the guideline

23  sentencing range, many other things will be considered by

24  the Court in fashioning an appropriate sentence,

25  including the statutory sentencing factors under 18 U.S.

1   Code, Section 3553(a).

2          Those statutory sentencing factors include the

3   nature and history of your crime, and your own history

4   and characteristics; how to reflect the seriousness of

5   your offense; promote respect for the law; provide just

6   punishment for your crime; discouraging further criminal

7   conduct by others; protecting the public from further

8   crimes by you; providing you with effective correctional

9   treatment; avoiding unwarranted sentencing disparities;

10  and providing restitution to any victims.

11         Have you discussed with your lawyer the statutory

12  sentencing factors I just described to you and how those

13  might apply to your case?

14              THE DEFENDANT:  Yes, Your Honor.

15              THE COURT:  Although your lawyer has estimated

16  the likely range of your sentence based on his

17  professional judgment and experience neither your lawyer,

18  nor anyone else, can say for certain what guideline

19  sentencing range applies to your case until after the

20  presentence investigation has been completed, and the

21  Court has resolved any disputed issues.

22         Therefore, do you understand the maximum sentence

23  I mentioned earlier still could apply, despite your

24  lawyer's estimates, and despite the terms of your Plea

25  Agreement?

05/23/2024      USA v. HANES      24-10013      23

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  As pointed out in paragraphs 3 and 4

3    of your Plea Agreement, at sentencing the Court may

4    consider any evidence concerning your background,

5    character and conduct, provided it's reliable, even

6    though it may not be proved beyond a reasonable doubt.

7          And in determining what guideline applies, and

8    what sentence to impose, inside or outside the resulting

9    guideline range, the Court may take into account all

10   relevant criminal conduct, including counts to which you

11   did not plead guilty or were never even charged with and,

12   thus, have not been convicted.  All these factors,

13   separately or together, could have a major affect upward

14   or downward on the length of the sentence you ultimately

15   receive.

16         Therefore, there is no absolute guarantee today

17   that you will receive any benefit in terms of sentence

18   from pleading guilty.

19         Do you understand that?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  A criminal defendant who's convicted

22   at trial, in addition to having the right to file an

23   appeal, may under some circumstances attack the

24   conviction or sentence in a separate legal proceeding

25   known as a collateral attack.

1           But do you understand that as explained in

2   paragraph 13 of your Plea Agreement, you are generally

3   giving up your right to challenge this prosecution, your

4   conviction, or your sentencing in this case, whether by

5   direct appeal or by collateral attack?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  Paragraph 5 of your Plea Agreement

8   says that in exchange for your guilty plea the Government

9   agrees to not file any additional charges against you

10  arising out of the facts forming the basis for the

11  present indictment; to allow you to reserve the right to

12  request a downward departure and/or variance, in which

13  event the Government agrees to recommend a sentence no

14  higher than the high end of the guideline range; to

15  recommend you receive a two level reduction in offense

16  level for acceptance of responsibility; and if your

17  offense level is 16 or higher prior to any such

18  reduction, then the Government will move for an

19  additional one level reduction in offense level for

20  timely notification of intent to plead guilty.

21         Do you understand that?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  But the rest of paragraph 5 explains

24  how the Government can get out of its obligations under

25  the plea agreement and basically says if the Government

1  proves that you violated the plea agreement, that you

2  willfully obstructed or impeded administration of

3  justice, or willfully attempted to do so, or that you've

4  engaged in additional criminal conduct, then I can let

5  the Government out of its obligations under paragraph 5

6  of the Plea Agreement, and that will free the Government

7  up to pursue you for additional charges, higher

8  penalties, or both.

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Paragraph 6 of your Plea Agreement

12  is an additional obligation you're taking on to enter

13  into a Consent Order of Removal and Prohibition with the

14  Board of Governors of the Federal Reserve System.

15          Under statutory authority cited in that paragraph,

16  you understand that by virtue of this consent and order

17  you are agreeing not to become or continue serving as an

18  officer, director, employee, or institution affiliated

19  party, as defined in Title XII, 18 U.S. Code, Sections

20  1813(u) or 1818(b)(3), or participate in any in the

21  conduct of the affairs of any institution or agency

22  specified in 12 U.S. Code 1818(e)(7)(A) without the prior

23  approval of the appropriate federal financial institution

24  regulatory agency, as defined in 12 U.S. Code

25  1818(e)(7)(D).

1          Do you understand the obligations and restrictions

2     that you're agreeing to in paragraph 6?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  In paragraph 10 you're taking on a

5     number of obligations related to the financial penalties

6     and obligations you're taking on in this case.

7          I'm not going to go through all of these with you

8     but at a high level, they obligate you to work with and

9     cooperate with the Department of Justice in identifying

10    assets and resources that could be used to satisfy your

11    financial obligations that are going to be imposed as a

12    result of this guilty plea.

13         It places restrictions on your ability to open

14    lines of credit, dispose of property, valuables, things

15    like that, and a lot of other related things.

16         I am not going to go over all this with you.

17         Have you gone over all this with your lawyer and

18    gotten all your questions answered about the matters that

19    you're agreeing to in paragraph 10 of the Plea Agreement?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  Very well.  Paragraph 15 has you

22    waiving any right you might have to recover any

23    attorney's fees that you've expended in this litigation.

24    You understand that?

25         THE DEFENDANT:  Yes, sir.

05/23/2024     USA v. HANES     24-10013     27

1           THE COURT:  All right.  Does the written Plea

2    Agreement that you've signed contain all the promises and

3    understandings between you and the Government?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Are there any side deals or oral

6    agreements between you and the Government that are not

7    set forth in your written Plea Agreement?

8           THE DEFENDANT:  No.

9           THE COURT:  There can be a lot of bad

10   consequences from your decision to plead guilty in this

11   case beyond the conviction and the sentence you receive

12   here.  I'm only going to go over a few of these.

13          First of all, if you're convicted of another crime

14   in the future, your sentence in that case could be made

15   longer as a result of your conviction in this case

16   because now this conviction will become part of your

17   criminal history.

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  If you were on probation, parole, or

21   supervised release in another criminal case when you

22   committed the offense in this case, then as a result of

23   pleading guilty today, your release in any such other

24   case could be revoked and you could be required to serve

25   prison time in that case that would be in addition to any

1  sentence imposed in this case.

2          Do you understand that?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  If your guilty plea is accepted it

5  could result in your being deprived of valuable civil

6  rights as a citizen, such as the right to vote, to hold

7  public office, to serve on a jury, and to possess any

8  kind of firearm.

9          Do you understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Mr. Smith, would you summarize what

12  the evidence would be if this case went to trial and

13  represent that the government could establish guilt

14  beyond a reasonable doubt on all the essential elements

15  of Count 1 of the Information?

16          MR. SMITH:  Yes, Your Honor, and I'll

17  incorporate what has been provided for in paragraph 2 of

18  the Plea Agreement, though I will summarize what is

19  provided for in that paragraph.

20          Essentially, on or around December 2022, through

21  at least July 2023, the defendant executed a scheme or

22  artifice to defraud the Heartland Tri-State Bank in

23  Elkhart, Kansas.

24          During that time frame, the defendant did serve as

25  the Chief Executive Officer, CEO, of the bank, so he was

1  an officer/employee of that financial institution.

2       And during the course of the scheme he initiated

3  10 outgoing wire transfers that resulted in the transfer

4  of the $47.1 million that we have mentioned today.

5       The investigation revealed that in or around

6  December of 2022, the defendant began communicating with

7  an unidentified third-party co-conspirator by WhatsApp,

8  which is an electronic messaging app.  Those

9  conversations generally were steered toward the defendant

10 investing in cryptocurrency.

11      During that time period, the defendant maintained

12 personal bank accounts at Heartland Tri-State Bank and

13 another bank in the area.

14      In January of 2023 the defendant made his first

15 transfer of $5,000.  That was from his personal bank

16 account to -- for the purchase of cryptocurrency.

17      Later in January the defendant embezzled

18 approximately $30,000 from the Elkhart Church of Christ.

19 Those funds were deposited in his bank account and later

20 financial transactions were made for the purchase of

21 cryptocurrency.

22      And in March the defendant was wiring funds from

23 Heartland Tri-State Bank to his account at the second

24 bank.  Those continued through May of 2023.

25      In April, the defendant embezzled another $10,000

05/23/2024     USA v. HANES     24-10013     30

1  from the church, and $10,000 from the Santa Fe Investment

2  Club.

3          The defendant also obtained unsecured loans to

4  continue with the purchase of the cryptocurrency.

5          In relation to Heartland Tri-State Bank, the

6  discussions with the unidentified third-party

7  co-conspirator had continued, and wire transfers began

8  being made to an entity identified as Payward Ventures,

9  which is a cryptocurrency exchange.  These conversations

10 were focussed on the purchase of cryptocurrency.

11         The first wire transfer from Heartland Tri-State

12 was on May 17th for $5,000, and then there was a wire

13 transfer of about 1.2 million from the defendant's

14 account at the second bank.

15         Conversations between the co-conspirator and the

16 defendant continued, and after being transferred to

17 Payward Ventures, we discovered that the funds were

18 transferred and deposited into a cryptocurrency account

19 at Kraken, which is another cryptocurrency exchange.

20         There is a table included in paragraph 2 which

21 summarizes the series of wire transfers from Heartland

22 Tri-State Bank to Payward Ventures.

23             THE COURT:  I thought you said the 5,000 was

24 from his bank account.  So would that really be -- does

25 that count against him or not?

1              MR. SMITH:  The $5,000 was from his bank

2    account, so that is not part of --

3              THE COURT:  Even though it shows up on the table

4    here, it is not unlawful?

5              MR. SMITH:  To Heartland Tri-State.

6              THE COURT:  Pardon?

7              MR. SMITH:  To Heartland Tri-State, it is part

8    of the scheme, yes.

9              THE COURT:  But is that unlawful?  Because it's

10   his own money.

11             MR. SMITH:  No.

12             THE COURT:  Okay.

13             MR. SMITH:  So throughout the series of those

14   wire transfers, the defendant and the co-conspirator

15   maintained communications through WhatsApp and,

16   essentially, the justification or the conversations

17   around the reasons to make these wire transfers were

18   various variations of, more funds were needed to unfreeze

19   the capital, or transfer the capital.

20             THE COURT:  Was that what the co-conspirator

21   told him, or is that what he was telling bank people

22   that?

23             MR. SMITH:  That is what the co-conspirator

24   represented to the defendant.

25             THE COURT:  Okay.

1          MR. SMITH:  But during this time the defendant

2    made misrepresentations to various people in order to

3    gain access and transfer those funds, or attempt to gain

4    access to further funds.

5          The defendant directed Heartland Tri-State Bank

6    employees to make the wire transfers and he lied to those

7    employees about the purpose of the transfers.

8          He lied to members of the bank board about the

9    purpose of the wire transfers.

10          The defendant induced a bank investor for the use

11   of the investor's Heartland Tri-State Bank account to

12   transfer money through the investor's account, before

13   making a wire transfer to Payward Ventures, that is

14   represented in the $8 million wire transfer and the table

15   that I discussed before.

16          After a July 7th wire transfer the defendant made

17   further false statements to bank investors and members of

18   the board of directors about the purpose of the wire

19   transfers.

20          Additionally, the defendant attempted to secure

21   another loan of approximately $69 million from a separate

22   financial institution, though that institution declined.

23          As part of the Plea Agreement and the factual

24   basis, the defendant admits while serving as an officer

25   of Heartland Tri-State Bank he did embezzle the funds

1  with the intent to injure and defraud that same bank in

2  the amounts described herein.

3        The embezzlement caused the failure of the bank

4  and the loss of funds transferred from Heartland

5  Tri-State Bank and the bank failure caused the complete

6  loss of equity by the bank investors.

7        Nothing further.

8        THE COURT:  Okay.  Was the thought here that

9  somehow he was going to make a big profit at this

10 cryptocurrency and then give the money back to other

11 people and then he would be wealthy off of the gains from

12 that or what?

13       MR. SMITH:  So I can't speak to what the thought

14 process was behind it but some of the electronic

15 communications represented what Your Honor just spoke to:

16 That it was an investment vehicle.

17       THE COURT:  Okay.

18       Mr. Stang, do you agree with the factual

19 representations and that it would establish all of the

20 elements of Count 1 of the Information?

21       MR. STANG:  Yes, Your Honor.

22       THE COURT:  Mr. Hanes, is everything the

23 prosecutor just said here about the facts of your case

24 true?

25       THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And is everything stated in

2    paragraph numbered 2 of your Plea Agreement regarding the

3    factual basis for your guilty plea true?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Although you've received legal

6    advice from your lawyer, is the final decision to plead

7    guilty yours, and yours alone?

8          THE DEFENDANT:  Yes, Your Honor, it is.

9          THE COURT:  Has your lawyer ever stated or

10   implied to you in any way that you must plead guilty

11   instead of taking your case to trial?

12         THE DEFENDANT:  No.

13         THE COURT:  Has your lawyer made it clear to you

14   that if you want to go to trial, he would do his best to

15   defend the case on your behalf?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Has anyone forced or threatened you

18   in any way to get you to plead guilty?

19         THE DEFENDANT:  No, Your Honor.

20         THE COURT:  Are you entering this plea of guilty

21   freely, voluntarily, and because you believe you are

22   guilty as charged?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Mr. Stang, do you believe your

25   client's competent to plead guilty and that he should be

05/23/2024     USA v. HANES     24-10013     35

1  permitted to do so?

2          MR. STANG:  Yes, Your Honor.

3          THE COURT:  Mr. Hanes, do you have any questions

4  of me, or your lawyer, about this case before I have you

5  enter your plea?

6          THE DEFENDANT:  No.

7          THE COURT:  Very well.

8       Have the defendant sign the written plea petition

9  in open court, and deliver that document, along with the

10 fully executed Plea Agreement to my courtroom deputy.

11      Defendant will rise to enter his plea.

12      Shan Hanes, with regard to the charge against you

13 in Count 1 of the Information, how do you now plead:

14 Guilty or not guilty?

15         THE DEFENDANT:  Guilty.

16         THE COURT:  I find the defendant's fully

17 competent and capable of entering a plea of guilty; that

18 the defendant understands the charge; that the

19 defendant's plea of guilty is being made freely,

20 voluntarily and because he is guilty as charged; that the

21 defendant's guilty plea is not the result of ignorance,

22 fear, inadvertence or coercion; that it is made with full

23 understanding of the consequences; that the defendant's

24 guilty plea is not the result of any promises, except

25 those specifically set forth in the Plea Agreement; that

05/23/2024     USA v. HANES     24-10013     36

 1 there exists a factual basis for the plea as relates to

 2 each essential element of the offense.

 3        Therefore, I accept the defendant's guilty plea.

 4        I'll defer my decision on whether to accept the

 5 Plea Agreement until after I have reviewed the

 6 presentence report.

 7        If I sentence the defendant, the parties may

 8 assume I have accepted the Plea Agreement.

 9        I'll order that a presentence investigation be

10 performed.

11        Sentencing is set for Thursday, August 8th, 2024,

12 2:30 p.m.

13        What's the parties' positions on detention?

14        MR. SMITH:  Your Honor, without speaking

15 specifically on detention, I think I can give the Court

16 some insight as to any risk of flight.

17        The defendant and defense counsel engaged with the

18 Government very early and we had conversations, you can

19 glean that from us filing an information here rather than

20 indictment.

21        I will also say that prior to us filing charges,

22 the defendant had a foreign trip planned and I expressed

23 concern about the defendant leaving the country.  The

24 defendant voluntarily cancelled his trip, and the next

25 day drove to Wichita and delivered the passport to

05/23/2024      USA v. HANES      24-10013      37

1  Wichita so that he would not have that passport.

2          THE COURT:  Thank you.

3       It's your burden.

4          MR. STANG:  I'm sorry, Your Honor?

5          THE COURT:  It's your burden.

6          MR. STANG:  Your Honor, we would like to keep

7  him out, if I heard you correctly.

8       It is kind of echoing in here, I apologize.

9       He has complied with all the bond restrictions.

10      There is a separate case pending in Morton County.

11 Same thing:  County Attorney decided to file this charge

12 in state court.  He is currently on pretrial release

13 through the Morton County District Court.  They gave him

14 permission to come up here today and enter the plea.

15      He is in the process of selling his house in

16 Elkhart, Kansas.

17      He is with his wife, and his daughters are here in

18 the courtroom today.  They are planning on moving to

19 Salina.

20      He has made every appointment.

21      I would like you to allow him to remain out on

22 bond.

23          THE COURT:  Mr. Hanes, with opportunity comes

24 responsibility.  I can leave you out based on what's been

25 represented here, I think the findings can be made for

1  that, but how you do will affect your sentence.

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  If you give me any trouble, I'll put

4  you in jail and reflect it in your sentence.

5          If you stay out of trouble, then I'll consider

6  that in figuring out one of the many things I'll consider

7  in where to sentence you.

8          You think you're up for that risk and

9  responsibility?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  All right.  I'll leave you out on

12 the same conditions as before.

13         Anything else?

14         MR. SMITH:  Not by the United States.

15         MR. STANG:  Not from defendant, Your Honor.

16         THE COURT:  We'll take a brief recess while we

17 get set up for the next matter.

18         (Proceedings conclude at 1:55 p.m.)

19         *******************************************

20                 C E R T I F I C A T E

21         I, Jana L. McKinney, United States Court

22 Reporter in and for the District of Kansas, do hereby

23 certify:

24         That the above and foregoing proceedings were

25 taken by me at said time and place in stenotype;

05/23/2024     USA v. HANES     24-10013     39

1          That thereafter said proceedings were

2 transcribed under my discretion and supervision by means

3 of transcription, and that the above and foregoing

4 constitutes a full, true and correct transcript of

5 requested proceedings;

6          That I am a disinterested person to the said

7 action.

8          IN WITNESS WHEREOF, I hereto set my hand on

9 this, the 5th day of June, 2024.

10

11          s/ Jana L. McKinney
            Jana L. McKinney, RPR, CRR, CRC, RMR
12          United States Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

40

```
 1                        I N D E X
                                              PAGE
 2

 3
       REPORTER'S CERTIFICATE                    39
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```