**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 6:24-CR-10013-JWB |
| ) | |
| SHAN HANES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**SENTENCING MEMORANDUM**

Defendant, Shan Hanes, respectfully submits this memorandum in aid of sentencing in this case. He feels additional background information would be beneficial to the Court in determining the appropriate sentence herein. Mr. Hanes would respectfully request a downward variance from the advisory guideline range, or in the alternative the low advisory guideline number of 235 months.

**INTRODUCTION**

*Personal History*

As contained in the Presentence Investigation Report ("PSIR"), Mr. Hanes had a good childhood. Both his parents were supportive to him and his sister while growing up. At a young age Mr. Hanes developed a good work ethic by assisting his father on the farm, operating farm equipment by his third-grade year.

After graduation from high school, Mr. Hanes attend Northwestern Oklahoma State University (Alva, Oklahoma), obtaining a B.S. in Agri-Business and a minor in Economics. His overall GPA was 3.96, and a GPA of 4.0 in his major. Subsequent to graduation, Mr. Hanes attended three years of on campus education at the Graduate School of Banking in Boulder, Colorado.

Mr. Hanes and his wife Michelle have three girls, all now adults. During the children's youth, he actively assisted in the girls' upbringing, and was supportive with both their educational and youth activities, including being a USA Swim Referee/Official.

Mr. Hanes became employed at the First National Bank of Elkhart in 1993, starting as a Loan Officer and making his way to President. This bank was part of a three-bank holding company. Due to profitability issues in the original two banks, the majority owners decided in 2008 to split the original two banks and sell the First National Bank of Elkhart to pay off the holding company's debt. The longtime presidents of the original two banks remained as presidents after they were split apart.

Mr. Hanes was instrumental in forming the Elkhart Financial Corporation, which became the Holding Company for Heartland Tri-State Bank (HTSB), where he became the President. He ceased being the President of HTSB in July 2023 due to his actions, which are the basis of the charge herein.

From August 2023 through April 2024 Mr. Hanes worked for Globe Life/American Income Veteran Division marketing burial benefits in conjunction with benefits provided by the VA.

During his career, Mr. Hanes has received numerous honors and accomplishments:

1. Testified before both the US House and Senate committees and US Treasury concerning both rural and agriculture issues;
2. Served on multiple boards including American Bankers Association, and Chairman of the Kansas Bankers Association;
3. Served on local school board USD 218;
4. Served a two-year term on the CFPB Committee for Community Banks.

*Crime of Conviction*

Mr. Hanes stands before this Court convicted of one count of Embezzlement By A Bank Officer, a violation of 18 U.S.C. §656 (a class B felony) and 18 U.S.C. §2. Mr. Hanes entered his plea of guilty pursuant to a plea agreement on May 23, 2024.

## **SENTENCING STANDARDS**

The role of a Sentencing Court is to first determine the Guideline range, and then evaluate a sentence in light of the factors in 18 U.S.C. §3553(a). The sentence should not be greater than what is necessary to comply with the purposes set forth in 18 U.S.C. §3553(a)(2). These purposes are:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) To afford adequate deterrence to criminal conduct;

(C) To protect the public from further crimes of the defendant;

(D) To provide the defendant with needed educational or vocational training, medical care, or other treatment in the most effective manner;

The factors to be considered, pursuant to §3553(a) include:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed;

(3) The kinds of sentences available;

(4) The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines;

(5) Policy statements by the Sentencing Commission;

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(7) The need to provide restitution to the victims of the offense.

18 U.S.C. §3553(b) allows the Court to impose a sentence below the Guideline range if the Court finds there exist mitigating circumstances of a kind or degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described.

This Court knows the law regarding sentencing, and needs no lengthy briefing as to its current state. Mr. Hanes, would however, note that in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the United States Sentencing Guidelines (Guidelines) violated the Sixth Amendment when applied in the mandatory fashion called for by the statute by which they were created. By excising the statute which made the application of the Guidelines mandatory, and instead making their use advisory, the Court was able to preserve the structure of the Guidelines without violating the Sixth Amendment.

As a result of the holding in *Booker*, a sentencing analysis begins with the proposition that a sentence should be "sufficient, but not greater than necessary" in light of the factors set forth in 18 U.S.C. 3553. This statute directs the Court to consider the characteristics of the offense and of the offender. *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Mr. Hanes concedes that this offense is a serious felony. However, the question remains what further punishment is "sufficient, but not greater than necessary" to adequately serve the statutory factors, as specifically applied to Mr. Hanes for his conduct giving rise to the charge herein.

**I.    Mr. Hanes has no prior criminal history.**

Mr. Hanes's criminal history is 0 points (Category I). He has no prior criminal convictions. There is a current case pending in Morton County, Kansas District Court, which is based on the same acts and relevant conduct as this case.

**II.    Mr. Hanes accepted responsibility for his actions.**

Mr. Mr. Hanes has accepted full responsibility for his actions. He answered questions from the FBI, produced documents, voluntarily surrendered his passport, and turned over cellular phones to be examined and searched. He waived an indictment and entered his plea to an Information. These actions saved the Government time and expenses.

Mr. Hanes understands that restitution will first go to the Stockholders and then to the FDIC. He wants to be able to make payments towards the restitution. His efforts to repay the loss is demonstrated by his repayment of the $40,000.00 taken from the Elkhart Church of Christ and the $10,000.00 taken from the Santa Fe Investment Club prior to the filing of this case. These losses were referenced in the PSIR.

**III.    Mr. Hanes did not retain any financial gain by way of his actions.**

Mr. Hanes does not in any way deny what he did was wrong, but as the Court perceived at the Plea Hearing, Mr. Hanes fell victim to a cryptocurrency scam called Pig Butchering. Falling victim to this scam does not excuse the illegal actions taken by Mr. Hanes in wrongfully taking money from the bank, resulting in the bank's failure and the loss to the Stockholders. However, this is what precipitated those actions.

Mr. Hanes is sorry about the loss he caused to the community and specifically the Stockholders of the Elkhart Financial Corporation. These people were his friends, co-workers, and neighbors, and all that he can do at this point is try to pay back the restitution upon his release from prison.

Mr. Hanes believes it is important for the Court to be advised that he did not benefit financially from his actions and actually lost some of his own funds. He advised the FBI that through the cryptocurrency scam he lost:

   A.  Approximately $60,000.00 taken from daughter's college fund;

   B.  Approximately $30,000.00 from his Savings Account at the Bank of the Panhandle;

   C.  Approximately $5,000.00 from his personal account at Hartland Tristate Bank;

   D.  Over $100,000.00 in personal loan proceeds;

   E.  $964,080.88 in stock from the Elkhart Financial Corporation;

These amounts total more than a $1,159,080.88 loss.

### IV.   The pending Kansas case will impose additional incarceration.

Currently Mr. Hanes is facing a 28 count Complaint in Morton County Kansas District Court. The basis for those charges is basically the same relevant conduct giving rise to the charge herein. Mr. Hanes has been advised that the County Attorney will be seeking a prison sentence and will request that it run consecutive to any sentence imposed in this case. The potential sentence in that case would be 86 months (7.2 years). If granted the 15% goodtime, the sentence would be reduced to 73.1 months (6.1 years).

### V.   A lower sentence increases the opportunity to repay restitution.

Mr. Hanes will be 53 at the time of his Sentencing in this case. The Guideline range is 235 months to 293 months (19.5 years to 24.4 years). Assuming he receives the 15% goodtime, his actual incarceration would be 199.75 months to 249.05 months (16.65 years to 20.75 years). This will make Mr. Hanes 69.65 years old to 73.75 years old at the time he is released. The CDC in 2022 estimated a 65-year-old male would die around 77.5 years old.

Mr. Hanes is younger and in good health, and it is hoped he will live into his 80s, but employability becomes very restricted for seniors looking for employment and health can take a quick turn as a person ages.

The Stockholder statements overall have a few things in common. While most request a long sentence, the majority agree that Mr. Hanes is one of the smartest people they had ever met, had helped them in the past, and would never have expected him to take money from the bank.

Repayment of some restitution to the Stockholders is possible if Mr. Hanes is released at an age that will allow him to get meaningful employment. As demonstrated by his past, Mr. Hanes is a hard worker and has generally excelled in the tasks assigned.

As set out above, the State of Kansas is seeking additional incarceration of 7.2 years (6.12 after goodtime). When added to the low Guideline number, assuming goodtime in each case, the combined sentence would be 22.75 years. This would make Mr. Hanes 75.75 years old at the time of his release, which would seriously decrease his ability to repay the restitution.

**VI.     Disparity in White-Collar crime sentencing should be considered.**

The Guideline range in this case appears to be greater than other White-Collar crime cases, and Mr. Hanes acknowledges that may be due to the amount of loss in his case. He would respectfully request the Court to consider the recent Sentencing of Janet Yamanaka Mello from the Western District of Texas. In a press release dated July 23, 2024, from the U.S. Attorney's Office, Western District of Texas, it stated that Ms. Mello received a 16 year sentence for stealing over $108,000,000.00 in a fraud scheme against the United States Army. The amount of loss in that case is approximately twice the loss attributed to Mr. Hanes. It was alleged that Ms. Mello used the funds on clothing, jewelry, vehicles, and real estate. It is

believed that Ms. Mello was charged with five counts of Mail Fraud, four counts of Engaging in a Monetary Transaction over $10,000.00, and one count Aggravated Identity Theft.

## CONCLUSION

Mr. Hanes made some very bad choices after being caught up in an extremely well-run cryptocurrency scam. He was the pig that was butchered. He has no prior criminal history, and up until this point has been a well-respected person in the community. For years he served and advised bank patrons in a beneficial manner, assisting with loans and investments. Mr. Hanes has always been a hard worker. He has always been able to find good employment and has excelled in his job.

Mr. Hanes's vulnerability to the Pig Butcher scheme caused him to make some very bad decisions, for which he is truly sorry for causing damage to the bank and loss to the Stockholders. However, an extended prison sentence only decreases the amount of restitution that can be returned to the Stockholders. The PSIR estimates the annual cost of housing Mr. Hanes in prison to be $49,770.00. A 20-year sentence will cost the government approximately $995,400.00.

Mr. Hanes would respectfully request the Court grant a downward variance, or at least the low guideline number to allow him a longer opportunity to pay towards the restitution herein.

Respectfully submitted,

HULNICK, STANG, GERING & LEAVITT, P.A.

/s/  John E. Stang
John E. Stang, #13488
Attorney for Defendant, Shan L. Hanes
310 W. Central Ave., Suite 111
Wichita, Kansas 67202
Telephone: (316) 263-7596
Fax: (316) 263-8084
E-mail: jstang@hulnicklaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 6th day of August, 2024, I electronically filed the foregoing Sentencing Memorandum with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Aaron Smith Aaron.Smith3@usdoj.gov

      /s/ John E. Stang
      John E. Stang, #13488
      Attorney for Defendant, Shan L. Hanes
      310 W. Central Ave., Suite 111
      Wichita, Kansas 67202
      Telephone: (316) 263-7596
      Fax: (316) 263-8084
      E-mail: jstang@hulnicklaw.com