# UNITED STATES DISTRICT COURT
## District of Kansas
(Wichita Docket)

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

      **v.**                            **CASE NO. 24-10013-JWB**

**SHAN HANES,**

      **Defendant.**

## UNITED STATES' MEMORANDUM re: RESTITUTION

The United States respectfully proffers the attendant information to the Court for its determination of the amount and manner of distribution of restitution to the victims' identified herein.

**I.**     **Procedural History**

On August 12, 2024, the defendant was sentenced for Count 1 of the Information (Doc. 1), charging a violation of 18 U.S.C. § 656, that is, Embezzlement by a Bank Officer. By entering into the Plea Agreement, the defendant admitted to knowingly committing the offense, and to being guilty of the offense. (Doc. 16, ¶ 1). The defendant agreed, and the Court ordered, forfeiture of property to the United States and restitution payable to the identified victims. (Doc. 16, ¶¶ 1, 8-9).

The Court ordered a restitution hearing be conducted within 90-days of the sentencing hearing pursuant to 18 U.S.C. §3663A to ascertain the full and proper amount of restitution due each victim.

II.     **Legal and Factual Background**

Heartland Tri-State Bank (HTSB) was a small, rural, financial institution located in Elkhart, Kansas. The defendant, along with a host of investors, formed the Elkhart Financial Corporation to purchase HTSB's predecessor and invest in the (presumed) success of HTSB. Elkhart Financial Corp. was a holding company invested solely in the existence of HTSB. The victims' value and investment in Elkhart Financial Corp. only remained if HTSB continued.

Heartland Tri-State Bank failed on July 28, 2023. The defendant, Shan Hanes serving as HTSB's Chief Executive Officer (CEO), had wired out $47.1 million of bank funds. Upon the failure of HTSB, the Federal Deposit Insurance Corporation was appointed as receiver, thus stepping into the shoes of HTSB. At that time HTSB was insolvent and the financial institution was sold to Dream First Bank. When HTSB became insolvent and put into receivership, all value of stock in HTSB was wiped out, causing a complete loss of investment to the community members that placed their faith, hope and financial resources into the Elkhart Financial Corp. The investments of those individuals became worth nothing.

The FDIC covered the losses of the depositors of HTSB and is entitled to an order of restitution in the amount of $47,105,000, as represented in the attached victim impact statement. (Att. A). The FDIC asserts its right to be attributed equal priority to the individual named victims of Elkhart Financial Corp. The FDIC and Department of Justice have entered into a Memorandum of Understanding (MOU) recognizing the theory of FDIC's status. (Att. B). The FDIC should not be considered the "United States" pursuant to 18 U.S.C.§ 3664(i), nor an insurer pursuant to 18 U.S.C. §3664(j).  Title 12 of the United States Code provides that the FDIC, as receiver of a failed federally insured financial institution, succeeds by operation of law to all rights, titles, powers, and privileges of the insured depository institution and those of any stockholder, member, accountholder, depositor, officer, or director of such institution, with respect to the institution and the assets of the institution. (12 U.S.C. § 1821 (d)(2)(A)(i)). The FDIC is therefore assumes the status and rights to restitution as a victim of Hanes' crimes. Implicitly, as represented in the MOU, the FDIC also requests a *pro rata*[1] distribution with the individual victims of Elkhart Financial Corp. (*id* at 4).

The defendant's embezzlement was the direct cause of HTSB's failure. Investors in Elkhart Financial Corp. have similarly requested restitution for the complete loss of investment in HTSB. The investors are entitled to a restitution order for the amount

---

[1] Merriam Webster defines *pro rata* as proportionately according to an exactly calculable factor (such as share or liability.

represented in Attachment C. This Attachment represents to cost basis[2] for the actual investment of each victim that requested restitution. The cost basis of loss claimed by investors is $8,295,023.31.

## III. Forfeiture

The Court granted an Amended Preliminary Order of Forfeiture to the United States for the contents of a cryptocurrency account under the custody of Tether Limited. (Doc. 28). During the investigation, funds from the HTSB embezzlement were traced to cryptocurrency accounts. While most of the funds were dissipated or transferred beyond the control of the investigating agencies, the named account at Tether Limited had contents seized before completely dissipated. Pursuant to the Amended Preliminary Order of Forfeiture approximately $8,071,037.80 was seized and transferred to the United States to be forfeited as proceeds of the embezzlement. Based on the forfeiture, the funds are now property of the United States and can be returned to victims by two processes, remission or restoration. For each process the Department of Justice's Money Laundering and Asset Recovery Section (MLARS) is the deciding authority on how to distribute the funds to victims. When returning funds as restitution through remission or restoration,

---

[2] The amounts do not include the purported stock value after the initial investment. The stock value represents an unrealized, and thus speculative, gain based on the purported health and performance of HTSB. Finding a reliable date of valuation for the unrealized gain would be difficult. Further, just as the victims should not be subjected to an unrealized loss to stock value, they cannot know or benefit from an unrealized gain.

MLARS will comply with the terms of any restitution order announced by the sentencing Court[3].

## IV. Conclusion

The Court should order full restitution to the named investors as identified in Attachment C, and to the FDIC as requested in Attachment A, pursuant to 18 U.S.C. §3663A9(a)(1). Consistent with the MOU, the United States maintains the FDIC is not considered the "United States" or an insurer as defined in 18 U.S.C. §3664(i) and (j). (Att. B). The FDIC requests a *pro rata* attribution of restitution. (*id.*). To illustrate the effect of a *pro rata* distribution, Attachment D delineates how the funds seized from Tether Limited would be distributed among the named victims and the FDIC, with 85.03% assigned to the FDIC.

*Pro Rata* distribution in many cases will be the most straightforward and equitable method to apply. Caselaw supports *pro rata* distribution in appropriate circumstances, though *pro rata* is not statutorily mandated, and the Court is left to its discretion via 18 U.S.C. §3664(i). In the instant case the Court may consider factors in determining the just assignment of restitution in any given case. Pursuant to 18 U.S.C. §3664(i), the Court may provide for an alternate "payment schedule" for each victim based on "the type and amount of each victim's loss and accounting for the economic circumstances of each

---

[3] Within the asset forfeiture legal process, there may be claimants unrelated to the current matter, or previously unknow to the United States.

victim." In the instant case, the Court can consider those factors in fashioning a schedule for repayment in relation to the named victims and the FDIC.

**WHEREFORE**, the United States moves this Court to make an Order of Restitution consistent with the lawful claims of the victims and applicable provisions of law.

>Respectfully submitted,
>
>KATE E. BRUBACHER
>United States Attorney
>
>/s/Aaron L. Smith
>AARON L. SMITH
>Assistant United States Attorney
>United States Attorney's Office
>301 N. Main, Suite 1200
>Wichita, Kansas 67202
>316-269-6481
>aaron.smith3@usdoj.gov
>Ks. S. Ct. No. 20447

## NOTICE OF ELECTRONIC FILING

I hereby certify that on November 4, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

>/s/ Aaron L. Smith
>AARON L. SMITH
>Assistant United States Attorney