# MEMORANDUM OF UNDERSTANDING
# REGARDING CRIMINAL RESTITUTION FOR FAILED FINANCIAL
# INSTITUTIONS WHEN THE FDIC IS APPOINTED RECEIVER

Summary

     This Memorandum of Understanding ("MOU") between the United States Department of Justice ("DOJ") and the Federal Deposit Insurance Corporation ("FDIC") recognizes that the FDIC, when acting as receiver of a failed financial institution ("FDIC-Receiver"), is entitled to receive all restitution due to that institution resulting from the conviction of crimes committed against that institution. Others adversely affected by the institution's failure, such as depositors, are recognized as claimants whose losses are addressed by the receivership priority scheme in the National Depositor Preference Act ("NDPA"), 12 U.S.C. § 1821(d)(11)(A).

     This MOU implements the provisions of: (1) the Victim and Witness Protection Act ("VWPA"), Pub. L. No. 97-291, 96 Stat. 1248 (Oct. 14, 1982), as amended by the Mandatory Victims Restitution Act of 1996 ("MVRA"), Pub. L. No. 104-132, 110 Stat. 1227 (April 24, 1996); and (2) the Federal Deposit Insurance Act ("FDI Act"), 12 U.S.C. § 1811 *et seq.*, as amended, which includes the NDPA. DOJ and the FDIC are committed to the goals of these statutes, including the vigorous pursuit of criminal defendants who cause harm to federally insured financial institutions,[1] imposition of restitution to the FDIC as receiver of these failed institutions, and recovery of assets from these defendants to pay restitution for the harm that they caused to the institutions.

     To accomplish these goals, DOJ and the FDIC agree to work together to ensure that these statutes are properly applied. This MOU is applicable to criminal restitution imposed for offenses of conviction as well as to restitution provided for by agreement.[2]

     1.    Victim Designation for Criminal Restitution When the FDIC Is Receiver for a Failed Financial Institution

     As provided by the MVRA, only a victim of the offense of conviction is entitled to receive restitution.[3] When a crime is committed against a financial institution, the victim is the

---

[1] The terms "federally insured financial institution," "insured depository institution," and "financial institution," mean any bank or savings association the deposits of which are insured by the FDIC.

[2] Restitution arises not only from conviction but also by agreement, including a pretrial diversion, a deferred prosecution agreement, or a plea agreement.

[3] The MVRA defines "victim" of the offense of conviction as

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2).

institution, not its depositors, other creditors, employees, or shareholders. If the institution fails, by federal law the FDIC is appointed receiver for the institution, whether it is federally-chartered or state-chartered. 12 U.S.C § 1821(c)(2)-(4).[4] Title 12 of the United States Code explicitly provides that the FDIC-Receiver is authorized to collect all obligations and monies due to the failed institution. 12 U.S.C. § 1821(d)(2)(B)(ii). Thus, as receiver, the FDIC stands in the shoes of and succeeds to all assets and other interests of the failed institution including its status as the victim under the VWPA or MVRA and is entitled to receive all restitution owed to the institution.[5] Fundamental principles of banking and receivership law as well as applicable federal criminal statutes also fully support this conclusion.[6]

    2.   <u>Compensating Losses of Depositors and Other Claimants</u>

The NDPA requires FDIC-Receiver to give the depositors of the failed institution first priority, after payment of the receivership's administrative expenses, in the distribution of the

---

[4] The FDIC has two separate capacities. In its receivership capacity, the FDIC is an appointed receiver of failed banks and thrifts. In its corporate capacity ("FDIC-Corporate"), the FDIC is a regulator of depository institutions and a corporate insurer of accounts at depository institutions. The rights and liabilities of the FDIC's two capacities are legally separate and distinct. *See, e.g., Bullion Services, Inc. v. Valley State Bank*, 50 F.3d 705, 708-09 (9th Cir. 1995). FDIC-Receiver may transfer or sell assets to FDIC-Corporate. *See* 12 U.S.C. § 1823(d)(1). With respect to any asset or liability so acquired or assumed, FDIC-Corporate acquires all of the rights, powers, and privileges of FDIC-Receiver. 12 U.S.C. § 1823(d)(3)(A). When an FDIC receivership is administratively terminated, whatever receivership assets and liabilities remain are transferred for value to FDIC-Corporate. *See* 12 U.S.C. § 1823(d)(1).

[5] Title 12 of the United States Code provides that the FDIC, as receiver of a failed federally insured financial institution, succeeds by operation of law to all rights, titles, powers, and privileges of the insured depository institution and those of any stockholder, member, accountholder, depositor, officer, or director of such institution, with respect to the institution and the assets of the institution. 12 U.S.C. § 1821(d)(2)(A)(i). Thus, the FDIC "steps into the shoes" of the failed institution upon its appointment as receiver and succeeds to the failed institution's status and rights as the victim of a criminal defendant's crimes against the institution for the purpose of receiving restitution as a victim under the MVRA.

[6] It is a well-established principle of banking law that money taken from a depository institution in the commission of a crime such as bank fraud or embezzlement is the property of the institution, not its depositors, creditors, or shareholders. Consistent with this principle, various sections of Title 18 that define banking crimes state those crimes as offenses committed against the institution, not its depositors, creditors, or shareholders. *See, e.g.*, 18 U.S.C. § 656 (theft, embezzlement by an officer or employee of the bank); 18 U.S.C. § 1014 (false loan applications); and 18 U.S.C. § 1344 (bank fraud). Once money is deposited in an institution, title thereto passes to the institution, and a debtor-creditor relationship is established between the institution and the depositor. *See, e.g., Marine Bank v. Fulton Bank*, 69 U.S. (2 Wall.) 252, 256 (1864); *United States v Aspinall*, 984 F.2d 355, 358 (10th Cir. 1993); *Crocker-Citizens Nat'l Bank v. Crocker Metals Corp.*, 566 F.2d 631, 637 (9th Cir. 1977). The depositor no longer owns the money once it is deposited but instead has a contractual right to receive a like amount from the institution on demand. *See, e.g., Marine Bank*, 69 U.S. (2 Wall.) at 256; *Jefferson Bank & Trust v. United States*, 894 F.2d 1241, 1243-44 (10th Cir. 1990). The deposit becomes the absolute property of the bank, and the bank may use the funds for its own profit. *Peoples Westchester Sav. Bank v. FDIC*, 961 F.2d 327, 331 (2d Cir. 1992).

assets of the institution's estate to creditors, including assets obtained from awards of criminal restitution made pursuant to the VWPA and the MVRA.[7] 12 U.S.C. § 1821(d)(11)(A)(i)-(iv). Under receivership law, depositors are creditors along with all non-depositor creditors. *Id.* Non-depositor creditors of the financial institution in receivership, including general creditors, as well as the institution's shareholders, are eligible to receive payment from the FDIC-Receiver only after depositors are fully repaid. 12 U.S.C. § 1821(d)(11)(A)(iii)-(v).

Although depositors of a failed financial institution as well as other creditors are not victims for purposes of receiving restitution for a defendant's offenses of conviction against the institution, the FDIC-Receiver is empowered to liquidate the assets of a failed financial institution for the benefit of its depositors and other creditors. *See* 12 U.S.C. § 1821(d)(2)(E). The NDPA then requires the FDIC-Receiver to distribute the institution's available assets, including monies received in restitution, *in priority to depositor claims* to the extent that monies are available for payment. 12 U.S.C. § 1821(d)(11)(A)(i)-(ii).[8]

---

[7] Deposit liabilities of the institution comprise those liabilities owed to the uninsured depositors as well as to FDIC-Corporate as subrogee to the insured depositors. *See* 12 U.S.C. § 1821(d)(11)(A)(ii), (g)(1) & (2). Unlike the general creditors or shareholders of a failed financial institution, uninsured depositors each receive $100,000 in deposit insurance payments (or $250,000 in the case of certain retirement accounts as noted following) and additionally share, on a *pro rata* basis, in each distribution of the institution's assets made by FDIC-Receiver in preference to all general creditors and shareholders. Effective April 1, 2006, as a result of The Federal Deposit Insurance Reform Act of 2005, Pub. L. No. 109-171, 120 Stat. 4 (Feb. 8, 2006) ("Reform Act"), the deposit insurance limit for "certain retirement accounts" was increased to $250,000. These are individual retirement accounts, state deferred compensation plan accounts, self-directed Keogh Plan accounts, and self-directed defined contribution plan accounts. Also as a result of the Reform Act, beginning January 2011 and every succeeding five years, subject to the approval of the FDIC Board of Directors and the National Credit Union Administration, the standard maximum deposit insurance amount, currently $100,000, as well as the insurance amount for retirement accounts, currently $250,000, may be increased by a cost of living adjustment, if both agencies determine that an increase is warranted and if Congress does not prevent the increase.

[8] The National Depositor Preference Act provides:

> [A]mounts realized from the liquidation or other resolution of any insured depository institution by any receiver appointed for such institution shall be distributed to pay claims (other than secured claims to the extent of any such security) in the following order of priority:
> 
> (i)     Administrative expenses of the receiver.
> (ii)    Any deposit liability of the institution.
> (iii)   Any other general or senior liability of the institution (which is not a liability described in clause (iv) to clause (v)).
> (iv)    Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause(v)).
> (v)     Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).

3

3.  When the Offenses of Conviction are Committed Against Others in Addition to the Financial Institution

In some prosecutions, the crimes of conviction were committed not only against a financial institution for which the FDIC is later appointed receiver but were committed also against others as well.[9] These cases involve the payment of restitution to multiple victims. In multiple victim cases, the FDIC-Receiver is to be treated on an equal basis by being paid a *pro rata* share of restitution to which all victims are entitled.[10] The FDIC is neither the "United States" for purposes of 18 U.S.C. § 3664(i)[11] nor an insurer for purposes of 18 U.S.C. § 3664(j),[12] and therefore is not to be subordinated for restitution purposes to the claims of other victims on either of these grounds.

---

[9] *See, e.g., United States v. Williams*, 292 F.3d 681, 684-88 (10th Cir. 2002) (losses caused to a bank, a credit union, and a private entity). This MOU is not intended to preclude restitution to these other victims nor is it intended to preclude restitution to, for example, individuals or entities, such as victims of a crime of violence, *see* 18 U.S.C. § 16, who incur costs as a result of receiving physical injuries in a bank robbery or to individuals, such as witnesses to a bank robbery, who incur costs in assisting law enforcement officials to investigate crimes against financial institutions – provided, of course, that it is established that restitution should be awarded to them as well.

[10] *See, e.g., United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003).

[11] *See, e.g., O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994); *I. K. Frazer et al. v. United States*, 288 F.3d 1347, 1354 (Fed. Cir. 2002); *Resolution Trust Corp. v Forest Grove, Inc.*, 33 F.3d 284, 290 (3d Cir. 1994); *Coast-To-Coast Fin. Corp. v. United States*, 52 Fed.Cl. 352, 364-65 (Fed. Cl. 2002); *Plaintiffs in All Winstar-Related Cases at the Court v. United States*, 44 Fed. Cl. 3, 5-9 (Fed. Cl. 1999). *But cf. United States v. Rostoff*, 164 F.3d 63, 69-70 & n. 9, 10 (1st Cir. 1999) (holding that under a different statute, the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, the term "United States" includes the FDIC). Contrary to the court's implication in n. 10 of *Rostoff*, the FDIC did not obtain restitution as an insurer of a victim (*see* n. 12, *infra*), but in its capacity as receiver, as successor in interest to the failed bank. *Id.* at 64, 70, n. 10. *See United States v. Rostoff*, 53 F.3d 398, 404 (1st Cir. 1995).

[12] Notwithstanding its name ("Federal Deposit *Insurance* Corporation"), the FDIC is not an insurer or other "provider of compensation" for purposes of 18 U.S.C. § 3664(j)(1). Section 3664(j)(1) provides that an insurer who provides compensation to a victim of a crime is entitled to receive restitution but only after restitution is paid to all other victims of the crime. While FDIC-Corporate functions as an insurer when it compensates depositors of a failed bank for the first $100,000 (or $250,000 in the case of certain retirement accounts) of losses on each of their deposit accounts, depositors as previously discussed are not "victims" under the MVRA, because in the case of banking crimes the money lost as a result of the offense of conviction is the bank's money and is not money belonging to depositors. *See* n. 6, *supra*. It also should be noted that a financial institution failure usually results from many factors, not merely because the institution may have been the victim of a crime. Thus, because FDIC-Corporate provides insurance only to depositors, not to the bank (the victim), the "insurer-of-a-victim" subordination provision of 18 U.S.C. § 3664(j)(1) is inapplicable to FDIC-Corporate. Section 3664(j)(1) also is inapplicable to the FDIC-*Receiver*, since the receiver is not an "insurer" at all. The FDIC's insurance function is a capacity only of FDIC-Corporate.

4. <u>Ongoing Contacts and Responsibilities Between FDIC and DOJ</u>

DOJ and the FDIC agree to work together to implement the terms of this MOU. In criminal restitution cases, the FDIC agrees to provide the necessary information on economic loss caused by a criminal defendant to a financial institution for which the FDIC is appointed receiver as well as to provide witnesses explaining the nature, extent, and causes of the loss, the FDIC's receivership process, and the amounts and projections of payments by FDIC-Receiver to creditors of the failed institution. Additionally, upon written request by DOJ prosecutors, the FDIC will provide all information necessary to support any victim impact statement or restitution order to the court, investigative agency, or other involved regulatory agency in each case. As used in the preceding sentence, "information" includes the ability to interview employees of the FDIC. DOJ agrees that it will represent to the sentencing court that the FDIC, when acting as receiver of a failed financial institution, is entitled to receive all restitution due to that institution resulting from the conviction of crimes committed against that institution.

5. <u>Effective Date</u>

This Memorandum of Understanding shall become effective on _September 5_, 2007, and is applicable to all cases in which criminal restitution may be ordered or imposed by agreement on or after this date.

Approved and hereby adopted by the undersigned.

Dated: 8/23/07

CRAIG MORFORD
Acting Deputy Attorney General
Department of Justice

Dated: 9/5/07

SARA A. KELSEY
General Counsel
Federal Deposit Insurance Corporation