11/05/2024   USA v. HANES   24-10013-01   1

```
 1              IN THE UNITED STATES DISTRICT COURT
                       DISTRICT OF KANSAS
 2


 3  THE UNITED STATES OF AMERICA,

 4            Plaintiff,

 5       vs.                          District Court
                                      Case Number
 6  SHAN HANES,                       24-10013-01

 7            Defendant.

 8

 9                  TRANSCRIPT OF PROCEEDINGS

10
          On the 5th day of November, 2024 at 2:05 p.m. came
11  on to be heard in the RESTITUTION HEARING in the
    above-entitled and numbered cause before the HONORABLE
12  JOHN W. BROOMES, Judge of the United States District
    Court for the District of Kansas, Sitting in Wichita.
13        Proceedings recorded by mechanical stenography.
          Transcript produced by computer.
14

15
    APPEARANCES
16
         The Plaintiff appeared by and through:
17       Mr. Aaron Smith
         United States Attorney's Office
18       301 N. Main, Suite 1200
         Wichita, Kansas 67202
19
         The Defendant appeared by and through:
20       Mr. John Stang
         Hulnick, Stang, Gering & Leavitt, PA
21       310 W. Central, Suite 111
         Wichita, KS 67202
22

23

24

25
```

1              (The following proceedings commenced at 2:05 p.m.
2    and have been requested transcribed:)
3              THE COURT:  This is Case Number 24-10013, United
4    States versus Shan Hanes.
5         May I have appearances, please.
6              MR. SMITH:  Your Honor, the United States
7    appears by Assistant United States Attorney Aaron Smith.
8              MR. STANG:  May it please the Court.  Mr. Hanes
9    appears by and through John Stang.
10             THE COURT:  Thank you.
11        Okay.  We're here today to take up restitution in
12   the matter, which I delayed ruling on at the prior
13   sentencing hearing so that everyone could get their
14   affairs in order on this and get the information that I
15   needed to make a decision.
16             I have a United States' Memorandum regarding
17   restitution filed at Docket Entry 36 in this case and it
18   indicates -- indicates that the FDIC wants to be treated
19   like a victim just like any of the other victims and get
20   a pro rata share of any amounts recovered in this case,
21   which is not just a formality, because I understand that
22   about $8 million or so has been recovered from one crypto
23   account that the Government was able to get to before it
24   got away from them.  So there is at least some money to
25   pay restitution.

1          The FDIC wants 47,105,000.
2          The shareholders probably have different
3   perspectives on the value of their loss but the memo
4   basically presents it on a basis of their cost basis in
5   the failed bank, broken down in -- think this is
6   Attachment B to the Government's memorandum, or maybe
7   that's -- is that C?
8          MR. SMITH:  C, Your Honor.
9          THE COURT:  C.  Which the far right column of
10  that document gives a line by line of the cost basis for
11  each of the shareholders that totals up to $8,295,023.31.
12         So then there's an attachment D, which basically
13  puts all the victims in a spreadsheet and based on their
14  relative claims, breaks out how much they would receive
15  of the 8 million and change that was recovered, and
16  it's -- those numbers are pretty small, with the FDIC
17  taking about 85 percent of that, and then the balance of
18  it being shared on a pro rata basis with the investors.
19  So that's what is presented here.
20         So now I'll hear from the parties on what you want
21  me to do.
22         MR. SMITH:  Thank you, Your Honor.
23         The basics of the facts are just as the court has
24  laid out and included in the United States' Memorandum.
25         To simplify, what we're asking is for an order of

1  restitution with FDIC being a victim with their claim as
2  described in attachment A of 47,105,000.  That's also the
3  amount that was contemplated in the plea agreement in
4  this case, discussed in the factual basis, and agreed to
5  by the parties.
6          As to the named victims of Elkhart Financial
7  Corp., I have also in Exhibit C identified a cost basis
8  restitution request and delineated the restitution
9  request for each of the victims who have submitted a
10 claim for restitution in this case.  Your Honor has
11 already mentioned that amount that is Attachment C to the
12 memorandum.
13         We would ask that those named victims be granted
14 the order of restitution as to those amounts of the cost
15 basis of the value that they -- the cost cash basis of
16 what they put into Elkhart Financial Corp. to purchase
17 the bank.
18         That value, as the Court knows, was wiped out upon
19 the failure of Heartland Tri-State Bank and, as such,
20 they have been rendered with zero funds, zero investment,
21 zero monies.  Your Honor heard the victims speak at the
22 sentencing hearing as to that effect that the loss of
23 that investment, the funds had on them personally, on
24 their families, on their future, on their retirement, et
25 cetera, so we would ask that the Court identify those

1  individual parties as victims in the amounts as
2  identified in the memorandum of restitution.
3          I did note that pursuant to the Court's
4  preliminary order of forfeiture there was an amount of
5  funds recovered, and the Court mentioned this, from a
6  crypto currency account.  Those funds were seized
7  pursuant to a order of forfeiture and are in forfeiture
8  proceedings.
9          However, the Money Laundering Asset Recovery
10 Section of the Department of Justice has two procedures,
11 remission or restoration, to turn those funds over for
12 purposes of paying restitution to the named victims.
13         The Money Laundering Asset Recovery Section,
14 through either restoration or remission, will follow the
15 order of the Court as to restitution.  So whatever the
16 Court orders here today will have an effect on how those
17 funds can be attributed to restitution.
18         As to the statutory scheme that the Court has
19 mentioned, in my memorandum I have noted that FDIC does
20 make a few specific requests.  First, based upon the
21 interpretation of law and the interplay between Title 18
22 and Title 12, would ask that the FDIC not be identified
23 as the United States for purposes of this hearing, and
24 not be identified as an insurer.  The statutory
25 provisions that is relevant to is 18 United States Code

1  3664(i), which references the United States, and
2  subsection (j) which references being identified as an
3  insurer.
4        The FDIC did become receiver of this financial
5  institution upon its failure.  By the law cited in the
6  memorandum which is attached to my memorandum, so
7  Attachment B, the FDIC maintains that as receiver they
8  step into the shoes of the failed financial institution
9  and are, therefore, a priority victim.
10       So that's the statutory scheme the Court must
11 consider but also consider that in relation to 18 United
12 States Code 3663, and 3664, in how to correctly apportion
13 or schedule the payments and as the United States has
14 pointed out, the Court must make that individual
15 determination.
16       I would say under 18 United States Code 3664(i),
17 the first clause of (i), which does not apply to treating
18 someone as the United States but actually applies to
19 circumstances in which there is more than one victim
20 sustaining a loss, that the Court may provide for
21 different payment schedules for each victim based upon
22 the type and amount of each victim's loss, and accounting
23 for the economic circumstances of each victim.
24       And, Your Honor, I think those circumstances have
25 been covered in the prior sentencing proceeding and so

1  the Court must weigh those circumstances in relation to
2  the statutory scheme contained in 18-3664(i).
3          Thank you, Your Honor.
4              THE COURT:  Thank you.
5          Sir.
6              MR. STANG:  May it please the Court.  Thank you.
7          First of all, we are in agreement to the amounts
8  of restitution sought for the investor stockholders in
9  this case, 8,295,23 -- $8,295,023.31.  We would also
10 agree that the FDIC is owed restitution in the amount of
11 $47,105,000.  So we are in agreement to all the amounts.
12         For the Court's edification, the clerk does have
13 roughly $40,000 from the sale of my client's house that
14 they are holding pending restitution.
15         When I got a chance to take a look at the state's
16 [sic] memorandum in this case, I tried to do some
17 research and see what case law was out there.
18 Specifically as to 18 U.S.C. 3664 sub (i).
19         I think two things kind of come to play.  First of
20 all, Title 12 refers to FDIC as an agency.  Agency would
21 be the Government.  It would be excluded per sub (i).
22         The other one that kicks to me, though, is
23 accounting for the economic circumstances of each victim.
24 Now I'm not the best with math but I just counted out the
25 shareholders and it looks to me that 19 of the

1  shareholders had IRA accounts, which to me means
2  retirement, 13 did not.  So over half of the shareholders
3  in this case lost their retirement.  To me that screams
4  economic circumstances, I think as the Court pointed out,
5  kind of in the dire sense.
6          If I recall at the sentencing, one lady said she
7  would have to sell the family home, a couple of people
8  said they would have to go back to work.  I don't have
9  those notes with me.  Some said they would have to work
10 beyond when they had hoped to retire.
11         It is my client's wish -- I mean, he's convicted,
12 he's doing his time.  He has accepted his penalty.  He
13 would like to see the people of his community paid back
14 first before the FDIC, and we would ask the Court to do
15 it in that order, please.
16         Thank you.
17            THE COURT:  Thank you.
18         All right.  First of all, based on the evidence
19 submitted in the United States' Memorandum regarding
20 restitution at Docket Entry 36, I find that the Federal
21 Deposit Insurance Corporation sustained a loss of
22 $47,105,000 and is entitled to restitution on that.
23         I also find that the shareholders in this case
24 sustained collectively a loss of $8,295,023.31.  That's
25 based on the cost basis of their investment in the

1  corporation.
2          There is a lot of different ways you can quantify
3  loss, cost basis being one of them.  If there was some
4  assessment of the value of those shares, at different
5  times you end up with different values, could be higher,
6  could have been lower.  Ultimately, at some point, the
7  valuations diminish to zero as a result of what happened
8  here.
9          So the parties seem to be in agreement and I think
10 the most sensible approach under these circumstances is
11 to use the cost basis amount and, as a practical matter,
12 it lines up pretty closely with the amount that was
13 recovered from that crypto currency account which that,
14 combined with the little bit that they have gotten from
15 the defendant, may as a practical matter define all the
16 money that is going to be available for restitution in
17 this case to begin with.
18         So, to me, the cost basis makes sense and that's
19 what I am going to use as finding the amount of
20 restitution to which the shareholders are entitled.
21         That's also consistent with -- fairly consistent
22 with what the parties agreed to in the plea agreement,
23 paragraph 9.  It identified the FDIC with a total loss of
24 47.1 million and the shareholders with a loss, depending
25 on time of valuation, anywhere from a little over 9 to

1  $13 million.
2         The bigger question here becomes the priority of
3  payment and as the parties have described to everyone,
4  the issue is how does the FDIC get treated for purposes
5  of restitution.
6         The FDIC maintains that it steps into the shoes of
7  the bank and is to be treated like any other victim with
8  receiving its proportionate share of the full 47 million
9  and change, just like any other victim, rather than
10 having to wait and be paid after other victims are
11 repaid.
12        The part of the basis for that is detailed in the
13 memorandum that was attached as Exhibit B to the
14 Government's restitution memorandum.  That memorandum is
15 actually Memorandum of Understanding between the
16 Department of Justice and the Federal Deposit Insurance
17 Cooperation from 2007.  In the memorandum the parties
18 assert that as provided by Mandatory Victim Restoration
19 Act, only a victim of the offense of conviction is
20 entitled to receive restitution.  When a crime is
21 committed against a financial institution the victim is
22 the institution, not its depositors, other creditors,
23 other employees or shareholders.
24        It goes on to say that as receiver the FDIC stands
25 in the shoes of and succeeds to all other assets and

1  assets of the failed institution, including its status as
2  the victim under the relevant statutes and is entitled to
3  receive all restitution owed to the institution.
4       Now in this case the Government hasn't taken that
5  position strictly in the plea agreement.  Rather than
6  taking that position, the Government has agreed that both
7  the FDIC and the shareholders are victims and are
8  entitled to restitution on that basis.
9       So when I look at the relevant provision, it's 18
10 U.S. Code 3664, first of all, beginning in subparagraph
11 (i), it says if the Court finds that more than one victim
12 has sustained a loss requiring restitution by a
13 defendant, the Court may provide for a different payment
14 schedule for each victim based on the type and amount of
15 each victim's loss and accounting for the economic
16 circumstances of each victim.
17       And that's what defense counsel was arguing for a
18 moment ago.
19       The next sentence says, In any case in which the
20 United States is a victim, the Court shall ensure that
21 all other victims receive full restitution before the
22 United States receives any restitution.
23       And like I say, in the -- the FDIC's position is
24 that they are not considered the United States for
25 purposes of proceedings like this.  Rather, they step

1  into the shoes of the bank and should be treated
2  accordingly.
3         In looking into this, one of the things that
4  stands out to me -- first of all, the FDIC tries to
5  distinguish between its role as a receiver and its
6  corporate role, but I look at the banking statutes in
7  Chapter 12 and it doesn't acknowledge a distinction in a
8  legal status sense that I can see between the FDIC as a
9  receiver, and the FDIC as a corporation.  It is simply
10 the FDIC, and whatever it is for legal purposes appears
11 to be what it is.  So while they may take the view that
12 their role entitles them to be treated pursuant to some
13 different legal status, I didn't see that in the banking
14 acts themselves.
15        What I did see is Title 12 of the United States
16 Code, Section 1822 referring to the FDIC as the
17 corporation, which is the shorthand it uses -- Congress
18 used in that statute.  It says the corporation is, and
19 has been since its creation, an agency for purposes of
20 Title 18.
21        Title 18 is the United States Criminal Code.  And
22 it's the code under which we're operating here both for
23 purposes of restitution and for the underlying offense of
24 conviction.  And so if the FDIC is an agency, then it is
25 the United States for purposes of restitution.

1              Accordingly, I find that the second sentence of 18
2    U.S. Code 3664 subparagraph (i) instructs me that the
3    United States is not to be paid on a pro rata basis with
4    other victims, but it is to only be paid after other
5    victims receive full restitution.
6              The next provision that bears mention is 18 U.S.
7    Code 3664(j)(1) which says if the victim has received
8    compensation from insurance or any other source with
9    respect to a loss, the Court shall order that restitution
10   be paid to the person who provided or is obligated to
11   provide the compensation, but the restitution order shall
12   provide that all restitution of victims required by the
13   order be paid to the victims before any restitution is
14   paid to such a provider of compensation.
15             Now under 18 -- or 12 U.S. Code, Section 1811,
16   subparagraph (a) says, There's hereby established a
17   Federal Deposit Insurance Corporation which shall insure,
18   as hereinafter provided, the deposits of all banks and
19   savings associations which are entitled to the benefits
20   of insurance under this chapter, et cetera.
21             So, according to Congress, the Federal Deposit
22   Insurance Corporation is to insure these depository
23   institutions.
24             So, alternatively, under 18 U.S. Code 3664(j)(1),
25   I am instructed to pay the shareholder victims before I

1  pay the Federal Deposit Insurance Corporation.
2         And, finally, if I'm wrong about any of that,
3  which I could be, I further find that under the first
4  sentence of 3664(i), that I am entitled to use my
5  discretion to provide a payment schedule for victims
6  based on the type and amount of each victim's losses, and
7  accounting for the economic circumstances of each victim,
8  and I find that in the grand scheme of things, you have
9  all sorts of people who may be owners of banks and
10 financial institutions that might become insolvent
11 because of fraud schemes and things like transpired in
12 this case, so there might be circumstances where the
13 shareholders of a failed institution are wealthy
14 operations, investment funds, Wall Street institutions
15 dripping with money, and so there would be less of a
16 reason perhaps to treat them differently than the general
17 taxpayers who are basically standing behind the FDIC.
18        But in this case the evidence is clear that this
19 was a local banking operation funded by members of the
20 community who, to varying degrees, invested a substantial
21 part of their life savings in this operation and lost a
22 lot of that as a result of the crimes committed by the
23 defendant in this case.
24        I received victim statements at the sentencing
25 hearing to that effect, and I have a wealth of victim

1  impact statements that came along with the presentence
2  report in this case and, consequently, as a third and
3  independent basis for my decision to pay the shareholders
4  first, I think that their status in this case, their
5  economic circumstances as a class, to me, justifies
6  seeing that they're paid first.
7         So based on all that, I am ordering that the
8  shareholders in this case be paid restitution before the
9  FDIC recovers anything.
10        Consequently, I guess I need to make
11 individualized findings for this to be clear, and what I
12 am about to read doesn't mean you're -- the victims are
13 going to get exactly these numbers, because it's
14 predicated on almost $8.3 million in funds, and as I
15 mentioned earlier, the Government recovered just less
16 than 8.1 million from the crypto currency account,
17 supplemented with some amount a few tens of thousands of
18 dollars I think, from the defendant himself.  But what
19 the victims actually receive out of the available funds
20 should be near but probably something less than this and
21 unless some other money turns up along the way --
22        MR. SMITH:  And, Your Honor, I don't think you
23 need to read those as a line item but you could
24 incorporate that attachment to be your individualized
25 order for the named victims for restitution.

1           THE COURT: Well, usually when I am imposing
2    sentence in the ordinary case, they usually have me spell
3    these things out victim by victim.
4           So it won't take that long. This room full of
5    people came all the way from Western Kansas, and wherever
6    else they lived, to see what's going to happen. They
7    might as well hear it.
8           So I'm finding for the shareholder victims in the
9    following amounts:
10          Terri Adams $40,839.62;
11          Leland and Loretta Arthaud -- I'm sorry if I
12   mispronounce your name, $561,431.58;
13          Scott and Angela Arthuad $188,576.86;
14          Dian Boaldin $730,000;
15          Johnny and Dixie Boaldin $124,581.36;
16          Dennis and Mandy Burton $240,217.30;
17          Bart and Cleo Camilli $452,933.60;
18          Aaron and Brenda Cromer $108,804.40;
19          Christopher and Diane Gerstner $144,900;
20          Margaret Grice $243,782.18;
21          Roxann Grimes 120,000;
22          Trenton Boaldin $135,000;
23          Marla Harris $108,804.40;
24          Higgins Farms $190,937.68;
25          David and Jacque Higgins $381,875.36;

11/05/2024     USA v. HANES      24-10013-01          17

1           Kenny and Margaret Horton $127,382.80;
2           John Houtz $200,000;
3           Moe and Marla Houtz $455,225.78;
4           Benita Keener $165,492.50;
5           Jill Landrum $187,296.47;
6           Tammy Mize $40,839.62;
7           Craig and Stephanie Murray $187,143.86;
8           Patrick and Traci Overpeck $403,681.56;
9           Dee and Roseanne Panter $118,013.12;
10          Barbara Pate $379,419.22;
11          Chris and Becky Scott $190,937.68;
12          Ron Scott $349,824.90;
13          Tom and Ann Scott $396,378.76;
14          Dan and Laura Smith $363,481.40;
15          Bill and Sue Tucker $669,196.60;
16          Charles Tucker $3,172.54;
17          James Tucker, $144,859.76;
18          John and Lisa Tucker $139,992.40, for a total of
19   $8,295,023.31.
20          And as I said earlier, the FDIC is entitled to
21   restitution in the amount of $47,105,000, to be paid
22   after the other victims are paid.
23          Anything else we need to address today?
24             MR. SMITH:  Not by the United States.
25          Thank you.

1              MR. STANG:  Not by defense.
2         Thank you.
3              THE COURT:  Thank you.
4         Court's in recess.
5         (Proceedings conclude at 2:37 p.m.)
6
7         *******************************************
8
9                    C E R T I F I C A T E
10             I, Jana L. McKinney, United States Court
11   Reporter in and for the District of Kansas, do hereby
12   certify:
13             That the above and foregoing proceedings were
14   taken by me at said time and place in stenotype;
15             That thereafter said proceedings were
16   transcribed under my discretion and supervision by means
17   of transcription, and that the above and foregoing
18   constitutes a full, true and correct transcript of
19   requested proceedings;
20             That I am a disinterested person to the said
21   action.
22             IN WITNESS WHEREOF, I hereto set my hand on
23   this, the 4th day of November, 2024.
24
25

      <u>s/ Jana L. McKinney</u>
      Jana L. McKinney, RPR, CRR, CRC, RMR
      United States Court Reporter

1                           <u>I N D E X</u>
                                                            <u>PAGE</u>
2

3    REPORTER'S CERTIFICATE                                    19